**BOEDEKER, M.D., et al., Appellees,**

v.

**ROGERS, et al., Appellees; Duryee, Appellant.**

[Cite as *Boedeker v. Rogers* (2000), 140 Ohio App.3d 11.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74929.

Decided May 8, 2000.

12

*Kaufman & Cumberland Co., L.P.A., Steven S. Kaufman, Frank R. Desantis,* and *Thomas L. Feher,* for appellees James P. Boedeker et al.

*McCarthy, Lebit, Crystal & Haiman Co., L.P.A., David A. Schaefer,* and *Joshua B. Nathanson,* for appellee Herbert S. Bell, M.D.

**14**

*Calfee, Halter & Griswold, Mark I. Wallach, Christopher S. Williams, Tracy S. Johnson,* and *Alexandra M. Kowalski,* for appellant Harold T. Duryee.

*Martindale, Brzytwa & Quick* and *John E. Martindale; Montgomery McCracken, Walker & Rhoads, L.L.P., John W. Frazier IV,* and *John E. Caruso; KPMG Peat Marwick L.L.P.,* and *Frances J. DiSarro,* for appellee KPMG Peat Marwick L.L.P.

KARPINSKI, Judge.

This is an appeal by Harold T. Duryee, Superintendent of Insurance of the Ohio Department of Insurance, in his capacity as the liquidator of the P.I.E. Mutual Insurance Company. Duryee asks us to hold that the same Ohio law that explicitly authorizes the Superintendent of Insurance to assume responsibility over a liquidated insurer's affairs under Ohio Revised Code Chapter 3903 implicitly authorizes the Superintendent to be substituted as the plaintiff in this action in which shareholders of the insurer pleaded derivative claims on behalf of the corporation as well as individual claims on behalf of the shareholders. The shareholders opposed the Liquidator's bid for substitution as the plaintiff, and the trial court denied the Liquidator's request.

Because R.C. Chapter 3903 authorizes the liquidator of a covered insurer to prosecute any and all claims and other legal proceedings of the insurer, we believe that authority embraces claims asserted by shareholders derivatively on behalf of the insurer against the insurer's officers and directors. The authority conferred by R.C. Chapter 3903 is not so broad, however, as to require the liquidator to prosecute *bona fide* individual claims asserted by shareholders directly against the insurer's officers and directors. We therefore conclude that Duryee should have been substituted as the plaintiff as to the derivative claims asserted on the insurer's behalf by the shareholders, but not as to the individual claims asserted by the shareholders. Accordingly, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.

I

The circumstances giving rise to this appeal concern the collapse of the P.I.E. Mutual Insurance Company ("P.I.E."), which had been a not-for-profit mutual insurer owned and operated by its member/insured policyholders. We are told that a routine audit of P.I.E. conducted by the Ohio Department of Insurance in 1996 caused the department to investigate certain irregularities in P.I.E.'s finances. On December 10, 1997, Insurance Superintendent Duryee filed a complaint for rehabilitation in the Franklin County Common Pleas Court. This complaint sought an order under R.C. 3903.12 authorizing Duryee to rehabilitate

P.I.E. and to protect P.I.E.'s policyholders, creditors, and the public. On December 15, 1997, the Franklin County Common Pleas Court entered an agreed order appointing Duryee as rehabilitator of P.I.E.

One week later, on December 22, 1997, P.I.E. policyholders James P. Boedeker, M.D., Barbara Walsh, M.D., and Blase Pignotti, M.D., filed this action against various P.I.E. officers and directors, P.I.E.'s affiliated law firm, and P.I.E.'s auditors in the Cuyahoga County Common Pleas Court. The plaintiffs asserted claims in their capacity as policyholders of P.I.E., for harms done to P.I.E. by the P.I.E. defendants, that is, "derivative" claims. The plaintiffs' derivative claims included counts for unauthorized payments and excessive compensation, breach of fiduciary duties, and professional malpractice. The plaintiffs also asserted claims in their capacity as individuals, for harms to them personally by the P.I.E. defendants, that is, individual claims. While somewhat duplicative of the counts asserted as derivative claims, the plaintiffs' individual claims additionally included counts for conversion, tortious interference with contractual relations, and violation of Ohio insurance laws. The P.I.E. defendants contested the derivative and individual claims asserted by the plaintiffs.

Meanwhile, on January 8, 1998, Duryee, still in his capacity as rehabilitator of P.I.E., filed a separate action in the Franklin County Common Pleas Court against P.I.E. officers Larry Rogers, James M. Marietta III, and Warren L. Udisky. On March 12, 1998, Duryee, as P.I.E.'s rehabilitator, moved to intervene in the plaintiffs' Cuyahoga County lawsuit. Before that motion was decided, on March 23, 1998, the Franklin County Common Pleas Court, presiding over the rehabilitation of P.I.E., entered an order of liquidation, placed P.I.E. in liquidation, and appointed Duryee as the statutory liquidator of P.I.E.

On April 3, 1998, Duryee, as liquidator, filed a motion in the Cuyahoga County action requesting an order of substitution by which the liquidator, as the real party in interest, would "assume sole control over the prosecution of the claims asserted herein by Plaintiffs." The plaintiffs opposed Duryee's request.

In its June 30, 1998 order, the Cuyahoga County Common Pleas Court granted Duryee's motion to intervene but denied his motion for an order substituting him as plaintiff. In the same order, the court dismissed the plaintiffs' individual claims, leaving only the derivative claims pending for disposition. The court further ordered that the surviving claims be transferred to the Franklin County Common Pleas Court for further proceedings. The court separately certified that there was no just reason for delay, pursuant to Civ.R. 54(B).

Duryee, in his capacity as Liquidator, filed this appeal, case No. 74929, from the judgment that denied his motion for substitution.[1] In a separate appeal, case

No. 74963, the plaintiffs challenged the order dismissing their individual claims. This court consolidated those appeals for record, briefing, hearing, and disposition. In yet another appeal, case No. 74615, P.I.E. officer Marietta contested the order that denied his motion to stay proceedings and compel arbitration.

Following oral argument, we severed consolidated case No. 74929 from 74963 for disposition. We now decide Duryee's appeal in case No. 74929.[2]

## II

■ Before addressing the merits of Duryee's appeal, we must first consider whether we have authority to entertain this appeal at all. While none of the parties questioned in their appellate briefs or in oral argument whether the order denying Duryee's motion for substitution was final and appealable, we are nevertheless obliged to satisfy ourselves that we have jurisdiction to proceed.

We have appellate jurisdiction as may be provided by law to review judgments or final orders of the courts of record inferior to our court within this appellate district. Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2505.03(A). R.C. 2505.02(B) declares:

"An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

"* * *

"(2) An order that affects a substantial right made in a special proceeding;

"* * *

"(4) An order that grants or denies a provisional remedy and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

---

1. Duryee was succeeded as Superintendent by David Meyer, who was then succeeded by J. Lee Covington II.

2. In *Boedeker v. Rogers* (Dec. 16, 1999), Cuyahoga App. No. 74963, unreported, 1999 WL 1204875, we affirmed the dismissal of the plaintiffs' individual claims for conversion and violation of Ohio insurance laws but reversed the dismissal of their individual claims for tortious interference with contractual relations, breach of fiduciary duty, and professional negligence. In *Boedeker v. Rogers* (Dec. 27, 1999), Cuyahoga App. No. 74615, unreported, 1999 WL 1205827, we affirmed the judgment that denied Marietta's motion to stay proceedings and compel arbitration.

"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

R.C. 2505.02(A)(1) defines "substantial right" to mean "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(2) defines "special proceeding" as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(3) defines "provisional remedy" as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence."

We are satisfied that the judgment that denied Duryee's motion for an order of substitution is a "final order" under R.C. 2505.02 because it functionally denied a provisional remedy available to the liquidator, conclusively determined the action with respect to the provisional remedy, and precluded Duryee from obtaining meaningful relief if appellate review were deferred until all proceedings were concluded. We reach this conclusion based on our review of the comprehensive statutory authority Ohio law confers upon liquidators by R.C. Chapter 3903, the scope of which we will consider in greater detail *infra*. But for present purposes, it is sufficient to note that Ohio law authorizes a liquidator to obtain provisional remedies that are consistent with its mission to protect "the interests of insureds, claimants, creditors, and the public generally * * *." R.C. 3903.02(D).

In particular, R.C. 3903.05(A) expressly authorizes a liquidator to obtain injunctive relief to forbid anyone from commencing or further prosecuting any legal actions or proceedings, or interfering with the liquidator or with proceedings under R.C. 3903.01 to 3903.59, or wasting the insurer's assets, or engaging in any other disruptive action. R.C. 3903.21 additionally confers broad powers that enable liquidators to do what is "necessary or appropriate" to vindicate the interests they are assigned by law to protect.

We conclude that the order denying Duryee's request for substitution was the functional equivalent of an order denying an application by the liquidator for a preliminary injunction under R.C. 3903.05. Additionally, the order arguably operated as an order denying attachment of corporate assets, namely, legal claims of the corporation. In either case, the order conclusively determined that Duryee was not entitled to the relief sought. We further believe that Duryee would not be afforded a meaningful or effective remedy if an appeal were deferred until all proceedings were concluded. Preserving resources from impending dissipation demands swift and decisive action; the opportunity to avert such waste must be seized or may be lost for good.

To be sure, an order denying a liquidator's application for substitution is not expressly included within the list of "provisional remedies" contained in R.C. 2505.02(A)(3). But by its express terms, that list is illustrative and not exhaustive. In *Swearingen v. Waste Technologies Industries* (1999), 134 Ohio App.3d 702, 731 N.E.2d 1229, the court observed: "While the statute does list certain actions which are to be considered provisional remedies, it clearly does not provide an exhaustive list as evidenced by the 'not limited to' language included in the definition." *Id.* at 712–713, 731 N.E.2d at 1236.

We are convinced that the judgment denying Duryee's motion for an order of substitution conclusively denied a provisional remedy to the liquidator for which no meaningful relief could be provided if review were delayed until the close of all proceedings. Accordingly, the order is reviewable pursuant to R.C. 2505.02(B)(4).

While we are satisfied that R.C. 2505.02(B)(4) authorizes our review, we also cannot exclude the possibility that the order denying Duryee's application may also be reviewable as an order affecting a substantial right made in a special proceeding under R.C. 2505.02(B)(2). In *Morris v. Investment Life Ins. Co. of Am.* (1966), 6 Ohio St.2d 185, 35 O.O.2d 304, 217 N.E.2d 202, an insurer was taken over by the Superintendent of Insurance pursuant to R.C. Chapter 3903 as written at the time, and one of the insurer's stockholders was denied leave to intervene in the conservatorship proceedings. The *Morris* court ruled that the order denying the stockholder's motion to intervene was an order affecting a substantial right made in a special proceeding and was therefore appealable. Accord *Ratchford v. Proprietors' Ins. Co.* (1995), 103 Ohio App.3d 192, 658 N.E.2d 1127 (liquidation court's denial of claim under R.C. 3903.39 is an order affecting substantial right made in special proceeding).

It is an understatement to say that Ohio law pertaining to the appellate review of orders made in special proceedings has evolved considerably since 1966 in alternating directions. But we are nevertheless reluctant to ignore the *Morris* decision, which appears to furnish additional support for appellate jurisdiction. To the extent that the trial court's order affects a right the liquidator is entitled to enforce or protect under R.C. Chapter 3903 made in a special proceeding created by statute, the order would additionally qualify as a final order under R.C. 2505.02(B)(2).

Having determined that we have authority to review the judgment, we may now proceed to consider the merits of Duryee's appeal.

### III

Duryee's appeal presents five assignments of error, all of which contest the trial court's order denying his motion for substitution. Duryee's assignments of error are as follows:

"I. The trial court erred by denying the liquidator of P.I.E., as the real party in interest, the right to be substituted in as the sole party plaintiff in this derivative suit."

"II. The trial court erred by concluding that the right of the liquidator to prosecute derivative claims on behalf of P.I.E. was non–exclusive and, therefore, did not preclude appellees from concurrently prosecuting these claims."

"III. The trial court erred in concluding that intervention by the liquidator obviated the need for substitution."

"IV. The trial court erred by concluding, based upon on [sic] a non–existent record, that the Superintendent of Insurance, as liquidator of P.I.E., could not objectively and in good faith investigate and prosecute appellees' derivative claims."

"V. The trial court erred by imputing to the Superintendent of Insurance, in his capacity as liquidator of P.I.E., certain alleged conflicts of interest based on actions allegedly taken by the Ohio Department of Insurance, in its capacity as regulator of the insurance industry."

The common issue presented by these assignments of error is whether the trial court erred in denying Duryee's motion to be substituted as the real party in interest having sole control over the prosecution of the derivative and direct claims asserted by the plaintiffs against the P.I.E. defendants. We conclude that Duryee became the real party in interest as to the derivative claims but that the plaintiffs remained the real parties in interest as to their individual claims. Accordingly, the trial court did err in denying Duryee's motion as it related to the shareholder derivative claims but did not err in denying the motion as it related to the plaintiffs' direct claims. We therefore affirm in part and reverse in part.

█ It is axiomatic that an action must be prosecuted by the real party in interest. See Civ.R. 17(A); *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 64 O.O.2d 103, 298 N.E.2d 515. A "real party in interest" has been described as "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, *i.e.,* one who is *directly* benefitted or injured by the outcome of the case." *W. Clermont Edn. Assn. v. W. Clermont Bd. of Edn.* (1980), 67 Ohio App.2d 160, 162, 21 O.O.3d 457, 458, 426 N.E.2d 512, 514 (emphasis *sic*). The substantive law creating the right being sued upon determines the real party in interest. See *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 25, 20 OBR 210, 211–212, 485 N.E.2d 701, 702–703.

Civil Rule 25 authorizes the substitution of parties in the event of certain stated contingencies. Civil Rule 25(C) provides:

■ "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

Civ.R. 25(C) thus permits substitution by one who succeeds to an interest previously held by another. See, *e.g.*, *Maysom L.P. v. Mayfield* (1994), 96 Ohio App.3d 543, 645 N.E.2d 763. According to Civ.R. 17(A), substitution operates as if the action had been commenced in the name of the real party in interest.

■ In the instant case, the plaintiffs' complaint advanced derivative action claims as well as individual or direct claims. A conceptual distinction exists between shareholders' derivative actions and shareholders' individual or direct actions. One authority explains the distinction this way:

"Where the basis of the action is a wrong to the corporation, redress must be sought in a 'derivative' action. The shareholders' derivative action, like the pure 'class' action, was an invention of equity as a form of 'representative' action. The incidents and characteristics of derivative and class actions are quite different. In the shareholders' derivative action the right of the plaintiff to maintain the action is derivative or secondary. The corporation is not merely a formal, but is an indispensable party to the action. The shareholder, as a nominal party, has no right, title or interest in the claim itself. In contrast, in the pure 'class' action a person who has an individual or primary claim may bring an action on behalf of all persons similarly situated. A recovery in a class action belongs directly to the shareholders. Furthermore, in a direct shareholder action, the shareholder need only show an injury to himself that is distinct from any injury suffered by the corporation.

"In analyzing whether the complaint states a derivative or representative claim, the court must look to the nature of the alleged wrong rather than the designation used by plaintiffs. A plaintiff alleges a special injury and may maintain an individual action if the shareholder complains of an injury distinct from that suffered by other shareholders, or a wrong involving one of the shareholder's contractual rights as a shareholder. Ultimately, the court must look to whether the plaintiff has alleged a 'special' injury, in whatever form. Thus, where there is no question that plaintiffs are claiming an injury that was not suffered by all shareholders, but only by minority shareholders, that action is properly classified as representative rather than derivative. Some examples of claims giving rise to direct actions are claims that a proposed merger, recapitalization, redemption, or similar transaction unfairly affects minority shareholders.

"* * *

"Although shareholders with individual claims may have the benefits of the class action device, its use in this context gives rise to no special rules, whereas the shareholders' derivative action is surrounded by numerous restrictions which stem from the nature of the corporate structure. Shareholders have the right to bring direct and derivative actions simultaneously. In fact, plaintiff shareholders suing derivatively may amend the complaint to create a new cause of action in their individual interests, since in such a case there is no substitution of the parties before the court, but merely a change of their capacity." (Footnotes omitted.) 12B W. Fletcher, Cyclopedia of the Law of Private Corporations (Perm. Ed. 2000), Section 5908. See, also, *Grand Council of Ohio v. Owens* (1993), 86 Ohio App.3d 215, 219–220, 620 N.E.2d 234, 237.

Thus a shareholder brings a derivative action under Civ.R. 23.1 on behalf of the corporation for injuries sustained by or wrongs done to the corporation. See, *e.g., Weston v. Weston Paper & Mfg. Co.* (1996), 74 Ohio St.3d 377, 658 N.E.2d 1058; *Adair v. Wozniak* (1986), 23 Ohio St.3d 174, 23 OBR 339, 492 N.E.2d 426. A shareholder brings a direct action when the shareholder is injured in a way that is separate and distinct from the injury to the corporation. See, *e.g., Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217.

▮ There is no dispute that the plaintiffs in this case were "real parties in interest" at the time they filed their complaint advancing derivative and direct claims. The question is whether the subsequent judgment by the Franklin County Common Pleas Court ordering P.I.E. into liquidation pursuant to R.C. Chapter 3903 and appointing the Superintendent as liquidator of P.I.E. operated to displace the plaintiffs as the real party in interest to the shareholder derivative action claims and/or to the individual direct action claims. We consider each in turn.

A. Shareholder Derivative Action Claims

To determine whether Duryee became the real party in interest to the plaintiffs' derivative action claims, we must review the nature and extent of the authority granted to a liquidator under Ohio law. We note initially that the extensive authority conferred upon a statutory liquidator is intended to prevent waste of the insurer's assets. See 1 Couch on Insurance 3d (1997) 5–65, Section 5:37. This authority encompasses the disposition of the insurer's legal claims. One authority observes:

"The insurance commissioner acting as liquidator of an insolvent insurance company may, and under some circumstances must, pursue any litigation that has the potential of increasing the assets of the company. This power includes the right to intervene in actions in which the insurer's subrogation rights are involved, the right to institute an action to recover premiums collected and

retained by an agent, or to recover an assessment due from policyholders of a reciprocal insurance exchange. He may bring an action against the directors of the insurer; sue auditor's [*sic*] for allegedly negligent misrepresentation of solvent insurer; sue for the recovery of assets fraudulently transferred; and bring suit on behalf of creditors. However, the laws of some states prevent the liquidator from maintaining suit in his representative capacity if the cause of action is strictly personal in nature that is, if it belongs to an individual creditor or policyholder." (Footnotes omitted.) 1 Couch on Insurance 3d (1999 Supp.) 47–48, Section 5:39.

Ohio law similarly gives a statutory liquidator broad authority to prevent waste. Our Supreme Court has observed that: "The General Assembly has conferred upon the Superintendent and a trial court broad discretionary and equitable powers relating to the supervision, rehabilitation and liquidation of insurance companies." *Fabe v. Prompt Fin., Inc.* (1994), 69 Ohio St.3d 268, 273, 631 N.E.2d 614, 618. We review this comprehensive statutory scheme, mindful that "[s]ections 3903.01 to 3903.59 of the Revised Code shall be liberally construed to effect the purpose" of protecting "the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers * * *." R.C. 3903.02(C); 3903.02(D). See also *Fabe v. Prompt Finance, Inc., supra,* 69 Ohio St.3d at 275, 631 N.E.2d at 619–620. The purpose is not just "to protect the company and its shareholders." *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 219, 569 N.E.2d 1042, 1045.

R.C. Chapter 3903 confers substantial authority upon the Ohio Superintendent of Insurance once a liquidation order is entered. In particular, R.C. 3903.18(A) states:

"An order to liquidate the business of a domestic insurer shall appoint the superintendent of insurance and his successors in office as liquidator and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court. *The liquidator shall be vested by operation of law with the title to all of the* property, contracts, and *rights of action* and all of the books and records *of the insurer ordered liquidated,* wherever located, as of the entry of the final order of liquidation." (Emphasis added.)

R.C. 3903.21 contains a nonexclusive list of powers the liquidator may exercise:

"(A) The liquidator may do any of the following:

"* * *

"(6) Collect all debts and moneys due and claims belonging to the insurer, wherever located. * * *

"(12) Continue to prosecute and to commence in the name of the insurer or in his own name any and all suits and other legal proceedings, in this state or elsewhere, and to abandon the prosecution of claims he considers unprofitable to pursue further. If the insurer is dissolved under section 3903.20 of the Revised Code, he shall have the power to apply to any court in this state or elsewhere for leave to substitute himself for the insurer as plaintiff.

"(13) Prosecute any action which may exist in behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person[.]

"* * *

"(B) The enumeration, in this section, of the powers and authority of the liquidator shall not be construed as a limitation upon him, nor shall it exclude in any manner his right to do such other acts not herein specifically enumerated, or otherwise provided for, as may be necessary or appropriate for the accomplishment of or in aid of the purpose of liquidation."

R.C. 3903.05(A) further authorizes a court to enjoin actions that might interfere with the ability of the liquidator to discharge its statutory responsibilities:

"Upon complaint or motion of any * * * liquidator appointed in a proceeding under sections 3903.01 to 3903.59 of the Revised Code, any court of general jurisdiction may issue a temporary restraining order, a preliminary injunction, a permanent injunction, or such other orders that the court considers necessary and proper to prevent any one or more of the following:

"(3) Interference with the * * * liquidator or with a proceeding under sections 3903.01 to 3903.59 of the Revised Code;

"(4) Waste of the insurer's assets;

"* * *

"(6) The commencement or further prosecution of any actions or proceedings;

"* * *

"(11) Any other threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders, or the administration of any proceeding under section 3903.01 to 3903.59 of the Revised Code."

There is no dispute that the liquidation order the Franklin County Court entered in regard to P.I.E. conferred upon Duryee authority consistent with that provided under R.C. Chapter 3903.

We believe the statutory powers prescribed under R.C. Chapter 3903 would clearly authorize a liquidator to take over, without interference, any claims, suits,

or rights of action possessed and asserted directly by the insurer. We see no reason why there should be a different result for claims, suits, or rights of action asserted derivatively on behalf of the insurer by its shareholders. Whether the claim is asserted directly by the insurer or derivatively by its shareholders, the claim is asserted on behalf of the corporation to right an alleged wrong done to the corporation.

For their part, the plaintiffs first assert that R.C. 3903.21 is only permissive in enumerating the powers a liquidator *may* exercise. At the same time, however, R.C. 3903.18(A) states that the liquidator "*shall* be vested by operation of law with the title to all of the * * * rights of action * * *." (Emphasis added.) "In statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834 at paragraph one of the syllabus. By that rule of construction, R.C. 3903.18(A) vested title to the insurer's claims in the liquidator and R.C. 3903 .21 permitted, but did not require, Duryee to exercise certain powers. But the fact that Duryee could elect to exercise those powers does not imply that anyone else could prosecute such rights of action unless authorized to do so by the liquidator.

The plaintiffs correctly note that the foregoing statutes do not expressly state that the liquidator has exclusive authority to prosecute such claims. We believe, however, that the liquidator's authority to control exclusively the inferred litigation may fairly be inferred from this regulatory scheme. The obvious intent of such a statutory scheme is to give the liquidator sole authority to prosecute or abandon all legal rights of action that inure to the benefit of the insurer, including legal claims of the insurer's creditors, members, policyholders or shareholders who look to the insurer for satisfaction. See *Four Star Ins. Agency, Inc. v. Hawaiian Elec. Industries, Inc.* (1999), 89 Hawaii 427, 974 P.2d 1017; *Corcoran v. Frank B. Hall & Co., Inc.* (1989), 149 A.D.2d 165, 545 N.Y.S.2d 278. Concentrating this authority in the hands of a liquidator serves to reduce the potential that a multiplicity of actions by claimants having antagonistic interests will deplete the insurer's assets before the insurer's obligations are fairly extinguished.

By necessity, the interests that shareholders or other interested parties may seek to protect will be limited to the interests they possess. The interests the superintendent must represent, however, go beyond those of the immediately affected principals and include the interests of insurers, claimants, creditors, and the public generally. R.C. 3903.02(D). While the interests represented by shareholders and the interests represented by the Superintendent may be in

harmony at times, their interests may become dissonant at other times. So that the liquidation process does not degenerate into cacophony and disarray, there can be only one conductor.

R.C. Chapter 3903 recognizes that the liquidation of an insurer may affect varying interests. The code expressly charges the superintendent with the responsibility for representing those interests by, among other things, prosecuting or abandoning the insurer's legal claims. We believe the duly appointed liquidator, under the supervision of the liquidation court, must have the exclusive authority to prosecute or abandon the insurer's legal claims, including those brought derivatively on behalf of the insurer.

The plaintiffs rely on *Morris v. Invest. Life Ins. Co. of Am.* (1966), 6 Ohio St.2d 185, 35 O.O.2d 304, 217 N.E.2d 202. In that case, the Superintendent of Insurance, pursuant to R.C. Chapter 3903 as it existed at the time, filed a complaint in the Franklin County Common Pleas Court requesting an order to rehabilitate or liquidate the Investment Life Insurance Company of America. After the Superintendent was appointed conservator of the company, the trial court granted a shareholder's petition to intervene as a party to the conservatorship proceedings. When the shareholder challenged the superintendent's appointment as conservator, the trial court dismissed the shareholder as a party but continued the shareholder's intervention on a limited basis so as not to interfere with the superintendent. The Franklin County Court of Appeals reversed, holding that the shareholder had a right to intervene as a party. The Supreme Court of Ohio reversed the court of appeals, holding in its syllabus:

"2. Although there is no general statutory authorization for intervention, a trial court, in the exercise of its equitable powers, has discretion to permit intervention in an appropriate case.

"3. In a proceeding pursuant to Chapter 3903 of the Revised Code to rehabilitate or liquidate an insurance company, the trial court has discretion to permit a materially interested petitioner to intervene.

"4. In a conservatorship proceeding brought pursuant to Chapter 3903 of the Revised Code, a trial court has power—both inherent and statutory—to limit the intervention of a materially interested person in order 'to prevent interference with the proceedings * * * or to prevent interference with the conduct of the business by the superintendent.' (Section 3903.05, Revised Code, construed.)"

The *Morris* court ruled that the trial court did not abuse its discretion by granting the shareholder only a limited intervention in the conservatorship proceedings:

"The motion to dismiss [the shareholder] as a party charged that he was obstructing the proceedings. Presumably, the trial court thought that limited

intervention would accord [the shareholder] his day in court while curtailing the alleged undue interference. We have not been shown that the court abused its discretion. The court had inherent power as well as statutory authority to impose a limitation on an intervenor's activities. Furthermore, even if the trial court's order was an abuse of discretion, no prejudice has been demonstrated." (Citations omitted.) *Morris*, 6 Ohio St.2d at 191, 35 O.O.2d at 307, 217 N.E.2d at 206.

According to the plaintiffs, *Morris* establishes that because they are materially interested persons to this litigation, they are entitled to participate in these proceedings. They also say *Morris* establishes that the Ohio legislature did not intend to grant the superintendent exclusive authority to prosecute all claims relating to the liquidated insurer. Duryee counters by noting that *Morris* sanctioned only limited intervention by the shareholder in the conservatorship proceedings, whereas the plaintiffs here presumably seek full participation as parties to this derivative action. Duryee further argues that R.C. Chapter 3903 did not contain provisions comparable to current R.C. 3903.21, which recites a nonexclusive list of the liquidator's powers, including the authority to prosecute or abandon the insurer's legal proceedings.

In our view, nothing in *Morris* conflicts with the decision we reach here. Even if *Morris* would permit the plaintiffs to remain in the derivative shareholders' action in a limited capacity, this limited intervention would not permit the plaintiffs to prosecute the derivative action. That authority remains exclusively with the liquidator.

We appreciate the concern expressed by some that a liquidator may not necessarily pursue claims as zealously as might other interested parties. We are aware in particular of the criticism leveled by the plaintiffs and others that the superintendent may have been lax in regulating P.I.E. in the past and may not be inclined to pursue these proceedings as aggressively. Duryee answers this criticism by pointing to various actions and proceedings he has taken against P.I.E.'s former officers and directors.

We express no opinion on the merits of either contention. We restrict our analysis to the evidence of record and the law applicable to the case. We are convinced that R.C. Chapter 3903 invests this liquidator with the exclusive authority to prosecute the shareholders' derivative action claims against the P.I.E. defendants. While the plaintiffs had the authority to prosecute such claims prior to liquidation, the liquidation order effectively transferred that interest to the Liquidator. As a result, the liquidator should have been substituted as the real party in interest for purposes of the shareholders' derivative action claims pursuant to Civ.R. 25(C).

B. Individual Direct Action Claims

We believe individual claims asserted by shareholders directly against the P.I.E. defendants must be analyzed differently. As we noted above, a shareholder's direct claim differs from a shareholder's derivative claim because the shareholder's injury in the direct claim is personal, separate, and distinct from that otherwise suffered in common by the corporation and its other shareholders. There can be little doubt that an individual shareholder suffering such a personal, separate, and distinct injury is the real party in interest to assert such a claim. The question here is whether the Liquidator became the real party in interest to prosecute the plaintiffs' direct claims.[3]

Duryee does not appear to dispute that a shareholder is the real party in interest in a direct claim. Duryee's brief states:

"The Liquidator here acknowledges that he cannot pursue claims which are purely personal and that extend no further than the individual loss of one particular policyholder or creditor. Where the loss, however, is common to all policyholders of the failed insurer, then the claim is no longer personal and separate."

We already determined that the allegations in the plaintiffs' complaint were sufficient to permit the plaintiffs to proceed on certain direct claims. In *Boedeker v. Rogers* (Dec. 16, 1999), Cuyahoga App. No. 74963, unreported, 1999 WL 1204875, we held that the plaintiffs' individual claims for tortious interference with contractual relations, breach of fiduciary duty, and professional negligence were at least sufficient to survive dismissal at the pleading stage.[4] By definition, such claims are not for injuries suffered in common by all policyholders but rather are separate and distinct from that sustained by the corporation and its shareholders. It would therefore seem inescapable that the plaintiffs remained the real parties in interest to such claims. Duryee, nevertheless, argues that he still became the real party in interest to prosecute the plaintiffs' individual claims on their behalf. Guided by case decisions from other states, we do not agree.

In *Matter of Integrity Ins. Co.* (1990), 240 N.J.Super. 480, 573 A.2d 928, the court observed:

---

3. The trial court dismissed all of the plaintiffs' individual claims as merely duplicative of the derivative action claims and therefore did not decide whether Duryee would have been the real party in interest to valid direct claims.

4. One of the issues presented by this case was whether the plaintiffs' injuries were truly separate and distinct or, conversely, indistinguishable from that commonly suffered by P.I.E.'s shareholders and thus merely duplicative of the derivative action claims. While sufficient to avoid dismissal at the pleadings stage, the plaintiffs' allegations of separate and distinct injuries may, of course, be tested in further proceedings. Our discussion here is restricted to only those individual claims which are *bona fide* direct claims.

"The weight of authority makes it clear that a statutory receiver, such as the Liquidator here, may prosecute claims on behalf of creditors and policyholders of the insolvent company in order to preserve its estate assets, but may not maintain a suit in such a representative capacity if it is strictly personal in nature, that is, if the cause of action belongs clearly to the individual creditor or policyholder." *Id.*, 240 N.J.Super. at 491, 573 A.2d at 933.

In that case, the court understood the liquidator's complaint to seek recovery for losses sustained by the Integrity Insurance Company but not for individual losses incurred by creditors and policyholders. *Id.* at 496, 573 A.2d at 936. The court added:

"So there will be no misunderstanding, however, we reaffirm the principle that, to the extent that a creditor or policyholder of Integrity was personally harmed by the acts or omissions of any of the defendants, such a claimant would have the right to maintain a separate cause of action against these defendants in this or another jurisdiction." *Id.*

Similarly, in *Cotten v. Republic Natl. Bank of Dallas* (Tex.Civ.App.1965), 395 S.W.2d 930, the court said:

"Certainly a receiver for an insolvent insurance corporation * * * has a right to maintain a suit which is necessary to preserve the corporation's assets and to recover assets of which the corporation has been wrongfully deprived through fraud. In such a suit the receiver may be said to sue as the representative of the corporation and its creditors, stockholders and policyholders, for they have an interest in the corporation's assets and upon liquidation they are entitled to a proper distribution of the assets.

"But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain the suit himself, for the action is personal, separate and several, not joint, and extends no further than the individual loss of each particular creditor who sues. For example, one who proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representations. The aggrieved party and he alone may maintain the suit." *Id.*, 395 S.W.2d at 941.

 These authorities support the proposition that a liquidator does not have the authority to prosecute individual shareholder or policyholder claims that are personal in nature and do not inure to the benefit of the liquidated insurer. The

authorities cited by Duryee are not to the contrary. In *Liquidation of Am. Mut. Liability Ins. Co.* (1994), 417 Mass. 724, 632 N.E.2d 1209, the court determined that the receiver had exclusive authority to bring or compromise the insurer's "choses in action" as well as common claims of policyholders, claimants, and creditors for the benefit of the insurer's estate. The court was not asked and therefore did not determine whether there existed any personal claims. *Id.* at 733–734, 632 N.E.2d at 1214. Similarly, in *Corcoran v. Frank B. Hall & Co., Inc.* (1989), 149 A.D.2d 165, 545 N.Y.S.2d 278, the court ruled that the liquidator had authority to prosecute claims of the liquidated insurer's policyholders and creditors on behalf of the insurer; personal claims were not at issue. In *Ins. Commr. of Mich. v. Arcilio* (1997), 221 Mich.App. 54, 561 N.W.2d 412, the court held that the rehabilitator was authorized to bring claims on behalf of policyholders where the injuries suffered were common to all policyholders; the rehabilitator was not authorized, however, to pursue claims that were personal and not common to all policyholders. In *Four Star Ins. Agency, Inc. v. Hawaiian Electric Indus., Inc.* (1999), 89 Hawaii 427, 974 P.2d 1017, the court rejected the contention that the plaintiffs' injuries were "unique and personal," so the liquidator there could prosecute the plaintiffs' "common" claims. *Id.* at 435, 974 P.2d at 1025, fn. 9.

For his part, Duryee insists that Ohio statutes make him the real party in interest to the plaintiffs' direct claims. In particular, Duryee argues that only he can pursue the shareholders' individual claims because R.C. 3903.21(A)(13) authorizes him to "[p]rosecute any action which may exist in behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person[.]" We disagree.

In *Matter of Integrity Ins. Co., supra,* the court observed: "[A] liquidator may prosecute a claim "on behalf of" its creditors and policyholders, provided that the objective of such a suit is to increase the assets of the estate of the insolvent insurance company to which the creditors and policyholders, as well as the public, may look for satisfaction of their debt. Such an approach is entirely consistent with the goals and purposes of our Act. Most importantly, the interest of "the public" is thereby protected.

"* * *

"Moreover, as previously noted, other jurisdictions having statutes similar to our Act, have concluded that a liquidator of an insolvent insurance company may prosecute claims *on behalf* of creditors and policyholders where such actions are necessary to preserve the company's assets for distribution. However, we agree that conversely, a liquidator may not maintain a suit in such a representative capacity if the cause of action truly belongs to the individual creditor or policyholder, that is, if it is personal in nature and any recovery thereon will not

redound to the benefit of Integrity's estate." (Emphasis *sic*; footnote omitted). *Matter of Integrity Ins. Co.*, 240 N.J.Super. at 493–495, 573 A.2d at 935–936.

We similarly understand R.C. 3903.21(A)(13) to apply to obligations the liquidated insurer owes to its creditors, members, policyholders, or shareholders. When pursuing claims on behalf of the insurer's creditors, members, policyholders, or shareholders, the liquidator is in truth advancing those claims on behalf of the insurer so that the insurer's obligations may be extinguished. A shareholder's direct claim against an officer or director, by contrast, is personal to the shareholder and is not on behalf of the insurer. Consequently, R.C. 3903.21(A)(13) does not authorize the liquidator to prosecute the shareholders' direct claims.

Duryee also relies on R.C. 3903.21(A)(19), which authorizes a liquidator to "[e]xercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder, or member, including any power to avoid any transfer or lien that may be given by the general law and that is not included under sections 3903.26 to 3903.28 of the Revised Code[.]" While this statute gives the liquidator rights, remedies, and powers *equivalent to* those enjoyed by the insurer's creditors, shareholders, policyholders or members, it does not transfer the obligee's interest to the liquidator. The obligee remains the real party in interest for the obligee's claim. This statute therefore does not authorize the liquidator to prosecute a shareholder's direct claim against the insurer's officers and directors.

We accordingly conclude that Duryee was not the real party in interest with regard to direct claims that were personal to the plaintiffs and therefore outside the scope of relief otherwise available for injuries suffered in common by all shareholders of the corporation. Consequently, the trial court did not err in denying Duryee's motion to the extent that he sought substitution on the plaintiffs' direct claims.

## IV

For the reasons stated, we affirm the judgment to the extent that it denied Duryee's request to be substituted as the real party in interest for purposes of the *bona fide* direct shareholder claims asserted by the plaintiffs against the P.I.E. defendants. We reverse the judgment to the extent that it denied Duryee's request to be substituted as the real party in interest for purposes of the derivative shareholder claims asserted by the plaintiffs against the P.I.E. defendants. The cause is remanded for further proceedings.

*Judgment accordingly.*

O'DONNELL, P.J., concurs in judgment only.

ROCCO, J., dissents.

KENNETH A. ROCCO, Judge, dissenting.

In my opinion, this court lacks jurisdiction over this matter. Therefore, I would dismiss this appeal.

Despite the majority's best efforts to recast this action as a part of the liquidation proceeding, it is, in fact, a derivative action pursuant to Civ.R. 23.1, by definition, an action brought by "one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it." Shareholder derivative actions were recognized in equity and are not special proceedings. *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213. Therefore, the denial of the liquidator's motion to be substituted as the sole plaintiff in a derivative action cannot be characterized as "[a]n order that affects a substantial right made in a special proceeding" under R.C. 2505.02(B)(2), as the majority suggests.

The majority's reliance on *Morris v. Invest. Life Ins. Co.* (1966), 6 Ohio St.2d 185, 35 O.O.2d 304, 217 N.E.2d 202, is misplaced. The denial of a stockholder's motion to intervene in a *conservatorship* proceeding is not equivalent to the denial of a liquidator's motion for substitution as plaintiff in shareholder litigation. The fact that the former may be characterized as an order affecting a substantial right in a special proceeding does not have any bearing on the question whether the latter is such an order.

The majority's effort to characterize the order as a denial of a provisional remedy, appealable under R.C. 2505.02(B)(4), can only be described as forcing a square peg in a round hole. The liquidator's effort to assume control over the case simply cannot be viewed as the functional equivalent of an injunction against the further prosecution of a legal action pursuant to R.C. 3903.05(A)(6). If the liquidator's motion were successful, the action would not be enjoined; it would proceed with the liquidator as the new plaintiff. The ruling would not preclude these shareholders from prosecuting claims on behalf of the corporation. Nor can the liquidator's motion be viewed as the equivalent of a motion for an injunction against the appropriation of a corporate asset pursuant to R.C. 3903.05(A)(7). A derivative claim does not appropriate a corporate asset; it seeks to enforce a right *on behalf of the corporation* that the corporation refuses to pursue. Finally, the majority's dire predictions that corporate assets will be wasted or lost if the liquidator is not permitted to appeal immediately is unsubstantiated; no corporate assets are being used to pursue the action.

A provisional remedy is defined as a proceeding ancillary to an action, such as a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence. R.C. 2505.02(A)(3). A motion for substitution as a party cannot be considered ancillary or collateral—it proposes a change in the underlying structure of the action; it does not request an interim remedy to protect a party's

ability to enforce a judgment or to prevent irreparable harm during the pendency of the action. Therefore, I cannot in good conscience agree that the denial of a motion for substitution as a party is appealable as the denial of a provisional remedy.

In short, there is absolutely no reason why the trial court's order denying the liquidator's motion for substitution should be considered final and appealable.[5] So long as this action remains pending before the trial court, the liquidator can raise the issues discussed in its motion for substitution again through a variety of procedural devices. The majority has short changed the trial process by addressing this issue before it has fully ripened. Therefore, I dissent.

---

[5]. Of course, this was not a judgment "as to one or more but fewer than all of the claims or parties" that could be made final by a Rule 54(B) certification. Therefore, the Rule 54(B) certification entered here had no effect on the finality of this part of the trial court's order.