[Cite as *PNC Bank, N.A. v. Creative Cabinet Sys., Inc.*, 2014-Ohio-3264.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### DARKE   COUNTY

| | | |
|---|---|---|
| PNC BANK, N.A. | : | |
| Plaintiff-Appellee | : | |
| | : | Appellate Case Nos. 2013-CA-14 |
| v. | : | 2013-CA-15 |
| | : | |
| CREATIVE CABINET SYSTEMS, INC., | : | Trial Court Case No. 12-CV-134 |
| et. al. | : | |
| Defendants-Appellees | : | (Civil Appeal from Darke County |
| | : | Common Pleas Court) |
| idX DAYTON, LLC | : | |
| Defendant-Appellant/Cross-Appellee | : | |
| | : | |
| JOHN SNYDER, Receiver | : | |
| Defendant-Appellee/Cross-Appellant | : | |
| | : | |

. . . . . . . . . .

# O P I N I O N

Rendered on the 25th day of July, 2014.

. . . . . . . . . .

ARTHUR R. HOLLENCAMP, Atty. Reg. #0020528, ROBERT H. HOLLENCAMP, Atty. Reg. #0084370, and GARY M. HRUSKA, Atty. Reg. #0000589, 130 West Second Street, Suite 2107, Dayton, Ohio 45402
     Attorneys for Defendant-Appellee/Cross-Appellant, John Snyder, Receiver

TAMI HART KIRBY, Atty. Reg. #0078473, 1 South Main Street, Suite 1600, Dayton, Ohio 45402
     Attorney for Defendant-Appellant/Cross-Appellee, idX Dayton, LLC

RICHARD E. GREENBERG, Atty. Reg. #002261, Greensfelder, Hemker & Gale, P.C., 10 South

Broadway, Suite 2000, St. Louis, Missouri 63102

   Attorney Pro Hac Vice for idX Dayton, LLC

. . . . . . . . . . . . .

HALL, J.

{¶ 1} idX Dayton, LLC, appeals from a trial court order giving escrowed funds temporarily to the Darke County Clerk of Courts. Because this order is not final under R.C. 2505.02, we lack jurisdiction to consider this appeal's merits.

### I. BACKGROUND

{¶ 2} Creative Cabinet Systems, Inc., borrowed around $4 million from two banks and gave the banks a security interest in all of its property. Creative Cabinet defaulted on the loan, and PNC Bank, the successor in interest to the two banks, filed an action against it to recover the just-under $4 million still owed. At PNC's request, the trial court established a receivership for the preservation and eventual sale of Creative Cabinet's assets and appointed a receiver. The Receiver soon found a buyer–idX–and at the end of August 2012, they entered into an "Asset Purchase Agreement."

{¶ 3} The deal hit several snags, one of which was the anticipated $223,000 that Creative Cabinet owed 13 states in which it did business. According to the Receiver, for about a year, Creative Cabinet collected sales taxes but, due to a lack of cash, did not remit the money to the states. idX worried that, as purchaser of Creative Cabinet assets, the states would hold it liable for the unpaid taxes. To address this concern and others, on December 31, 2012, the Receiver and idX entered into an "Implementation Agreement for Asset Purchase Agreement." Under this agreement, idX deposited into an escrow account $250,000 of the roughly $2 million asset purchase price to be used to pay any sales-tax obligations:

Promptly following Purchaser's receipt of evidence sufficient to Purchaser in its reasonable discretion that all sales taxes of Debtor have been paid in full or that the applicable states have waived any claims for sales taxes, and within 180 days, Purchaser shall instruct the Escrow Agent to disburse to Receiver $250,000, or such lesser amount as remains in the Escrow Account as payment for sales tax, to the extent such Debtor's and Receiver's sales tax obligation have been satisfied or properly waived. Escrow Agent shall also disburse to Receiver partial amounts approved by Receiver and Purchaser to either fund payment of outstanding sales tax or reimburse Receiver for payment of sales tax. Any balance is payable to (1) pay sales tax, (2) Purchaser if there remain sales tax obligations not satisfied by the Receiver or waived by the applicable state authority or (3) Receiver if all sales tax obligations have been satisfied or waived by the applicable state authority.

*Implementation Agreement for Asset Purchase Agreement*, 9(b). No escrow funds were disbursed during the specified period. And the only tax obligation satisfied by the Receiver was to the State of Florida, to which the Receiver paid $23,000.

{¶ 4}     Soon after the 180-day window closed, the Receiver and idX each filed a motion for release of the escrow funds. The Receiver asked the trial court for $23,000 as reimbursement for the Florida payment and asked the court to distribute the $227,000 balance to PNC Bank. The Receiver claimed that his obligation under the Implementation Agreement was satisfied because Florida was the only state to which Creative Cabinet owed sales tax. idX disagreed. idX claimed that sales-tax obligations to the other states remain so under the agreement it is entitled to the

balance. (idX agreed to the reimbursement.)

{¶ 5}    An evidentiary hearing was held at which the Receiver presented the expert testimony of the accountant retained to help with the receivership. The accountant had analyzed Creative Cabinet's tax obligations and had prepared and filed tax returns in each of the states to which tax was owed. The expert testified that only Florida was paid because, of the 14 states that Creative Cabinet owed, only to Florida did it owe *sales* tax. In the other states, said the expert, Creative Cabinet owed *use* taxes. The expert explained that, unlike unpaid sales tax, unpaid use tax is an unsecured, non-priority debt. So the use-tax states will get their money only if money is left over from the sale of Creative Cabinet's assets after PNC Bank–the secured, priority creditor–is fully paid. This is doubtful, said the expert.

{¶ 6}    The trial court reimbursed the Receiver $23,000 but did not give the balance to either the Receiver or idX. The court found, "based on the undisputed testimony of [the expert], there are no further sales tax liabilities of Creative Cabinet (except Florida which will be paid as agreed)." Nunc Pro Tunc Judgment Entry - Cross Motions for Release of Funds, 3 (Oct. 4, 2013). Nevertheless, "in the interests of equity and in order to reduce the concern that idX Dayton will be subject to successor liability for sales taxes," the court gave the balance to the Darke County Clerk of Courts to hold "pending further order of the Court." *Id*. at 4. The entry says that the Clerk will hold the funds "for at least twelve (12) months (as later determined by the Court) to allow additional time to determine if sales tax claims are eventually pursued against idX Dayton." *Id*.

{¶ 7}    idX appealed.

## II. ANALYSIS

{¶ 8}   idX assigns two errors to the trial court. The first alleges that the court misinterpreted the terms of the Implementation Agreement, and the second alleges that the court erred by finding it undisputed that no sales taxes are due. The Receiver assigns one cross-assignment of error, alleging that the trial court erred by ordering the escrow funds be held by the Clerk for at least 12 months. While idX and the Receiver take it for granted that we have jurisdiction over this appeal, we are not convinced that the appealed order is a "final order" under R.C. 2505.02.[1] If it is, it is an order of the type described in either division (B)(2) or division (B)(4) of the statute.

### A. R.C. 2505.02(B)(2)

{¶ 9}   R.C. 2505.02(B)(2) provides that an order is a "final order" if it is "[a]n order that affects a substantial right made in a special proceeding * * *." A receivership is a "special proceeding." *Huntington Natl. Bank v. HPM Div., Taylor's Indus. Servs., L.L.C.*, 10th Dist. Franklin No. 10AP-200, 2010-Ohio-6176, ¶ 16, n. 1. But "[u]nless the order affects a substantial right, it is not a final order." (Citations omitted.) *Eng. Excellence Inc. v. Northland Assoc. L.L.C.*, 10th Dist. Franklin No. 10AP-402, 2010-Ohio-6535, ¶ 12. The appealed order here does not affect a substantial right.

{¶ 10}   "The concept of a substantial right involves the notion of a legal right that will be enforced and protected by law." (Citations omitted.) *Kierland Crossing, L.L.C. v. Ruth's Chris Steak House, Inc.*, 10th Dist. Franklin No. 11AP-627, 2011-Ohio-5626, ¶ 8; *see also* R.C. 2505.02(A)(1). Here, the appealed order undoubtedly *concerns* a substantial right–"[t]he right to

---

[1] The issue is not discussed in the briefs. We notified both idX and the Receiver that they should be prepared to discuss this jurisdictional issue at oral arguments, where the issue was discussed.

enforcement and performance of a contract involves a substantial right," *id*; *see also Niehaus v. Columbus Maennerchor*, 10th Dist. Franklin No. 07AP-1024, 2008-Ohio-4067, ¶ 19 ("The parties' rights to enforcement and performance of the purchase contract involved substantial rights."). But the appealed order does not "*affect*[] a substantial right," (Emphasis added.) R.C. 2505.02(B)(2). "An order affects a substantial right for the purposes of R.C. 2505.02(B)(2) only if an immediate appeal is necessary to protect the right effectively." *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 7, citing *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993). To show that an order affects a substantial right, "appellants must demonstrate that in the absence of immediate review of the order they will be denied effective relief in the future." *Bell* at 63. Neither idX nor the Receiver has done this here.

{¶ 11} idX and the Receiver each contends that it is entitled to the escrow funds. But the appealed order does not prevent the rightful party from getting the funds. The escrow funds have not yet been definitively allocated–the order does not actually award the funds to anyone. In *Leonard v. Georgesville Ctr., L.L.C.*, 10th Dist. Franklin No. 13AP-441, 2013-Ohio-5713, the Tenth District concluded that a similar order did not affect a substantial right:

> Here, appellants contend that the proposed listing price submitted by the receiver is too low, and therefore, the receiver will not obtain fair value for the property. Appellants argue that their right to receive fair value for the property is the substantial right at issue in this appeal. Although we agree that appellants have a substantial right to receive fair value for their property, the order at issue does not affect that substantial right because appellants are not foreclosed from

challenging the fairness of any future sale price. Although an order approving a receiver's final report and approving the definitive deposition of assets is a final appealable order, an interim order setting values or otherwise covering ongoing administration of the assets is not.

Because appellant is not foreclosed from contesting the fairness of any future sale price, the order at issue does not affect a substantial right.

(Citation omitted.) *Leonard* at ¶ 10-11 (concluding that it lacked jurisdiction and dismissing the appeal). The Ninth District has concluded that an order is not final that does not actually award any assets and anticipates further action. In *Champaign National Bank v. Preferred Capital, Inc.*, 9th Dist. Summit No. 24180, 2009-Ohio-6699, the appellant, a creditor of the defendant, appealed an order that directed the receiver "to pay outstanding expenses and wind up the receivership in the best interest of the secured creditors." *Champaign National Bank* at ¶ 1. The court concluded that this order was not final because it did not award any assets and the entry anticipated further action: "On the face of the judgment, the [trial] court anticipates further action by the Receiver, in winding up the receivership and distributing the remaining assets * * *. The judgment appealed from does not actually award any assets to any party. In the entry, the court indicates if the receivership becomes insolvent this will require further action by the parties and the court." *Id*. at ¶ 18; *see also Whipps v. Ryan*, 10th Dist. Franklin No. 12AP-509, 2013-Ohio-4334, ¶ 28 ("'While an order approving a receiver's final report and approving the definitive disposition of assets is a final appealable order, an interim report setting values or otherwise covering ongoing administration of the assets is not.' *[Whipps v. Ryan*, 10th Dist. Franklin No. 10AP-167, 2011-Ohio-3300,] ¶ 9.").

{¶ 12}   The appealed order here does not affect a substantial right, so it does not satisfy the "final order" definition in R.C. 2505.02(B)(2).

### B. R.C. 2505.02(B)(4)

{¶ 13}   R.C. 2505.02(B)(4) also describes this type of order as being a "final order": "An order that grants or denies a provisional remedy and to which both of the following apply: (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy. (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4). The Ohio Supreme Court has explained that "[t]his division of the final order statute recognizes that, in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment. In some instances, '[t]he proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." (Citations omitted.) *State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001). This isn't one of those occasions.

{¶ 14}   The appealed order here merely maintains the status quo. It does not conclusively determine entitlement to the escrow funds, so there is no need for "swift and decisive action" to preserve the funds. *See Boedeker v. Rogers*, 140 Ohio App.3d 11, 17, 746 N.E.2d 625 (8th Dist.2000) ("Preserving resources from impending dissipation demands swift and decisive action; the opportunity to avert such waste must be seized or may be lost for good."). The Eleventh District came to the same conclusion about a similar order concerning held funds. In *Dudek v. Lesnick*, 11th Dist. Trumbull No. 2010-T-0058, 2010-Ohio-3251, the trial court granted the

appellee's motion to place funds in escrow, after finding that otherwise the appellee would be irreparably harmed. The court also ordered the appellants to deposit $215,700 with their attorney, to be held in the attorney's trust account. And the court's entry stated that the funds could be removed only by order of the court. On appeal, the appellants argued that the entry satisfied the provisional-remedy definition of "final order" in R.C. 2505.02(B)(4)(b) because "it deprive[d] them of the use of their $215,700." *Dudek* at ¶ 18. But the Eleventh District disagreed: "The appealed entry merely maintains the status quo pending the trial court proceedings. Appellants will have a meaningful and effective remedy by way of an appeal once a final judgment is reached as to all claims and parties when the case is decided and/or dismissed." *Id*.

{¶ 15} We also note that to the extent that the trial court has concluded that only the taxes to Florida are truly sales taxes that would pass through to the purchaser of the assets, or that PNC may be entitled to the residue if no new sales tax liability surfaces, those conclusions are interlocutory. An appeal following final judgment will give idX and the Receiver a sufficient remedy, so the appealed order does not satisfy the "final order" definition in R.C. 2505.02(B)(4).

{¶ 16} Because the appealed order is not a "final order," we do not have jurisdiction to consider the merits of this appeal. This appeal therefore is dismissed.

. . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Arthur R. Hollencamp
Robert H. Hollencamp
Gary M. Hruska

Tami Hart Kirby
Richard E. Greenberg
Ronald Gold
Stephen Bernat
David Pierce
Kenneth Flacks
Scott Rudnick
Lawrence Burick
Daniel Riegle
Robert Shiffler
Hon. Jonathan P. Hein