OPINION
Plaintiff-appellant John Snyder, Inc. d.b.a. Bulldog Security appeals the Jefferson County Common Pleas Court's judgment in favor of defendant-appellee Robert Cooper d.b.a. Cooper's Heating, Air Conditioning and Refrigeration. For the following reasons, the judgment of the trial court is affirmed.
Bulldog Security is a manufacturer of car alarms located in a building in Wintersville, Ohio. Prior to moving into this building, Bulldog Security contracted with Cooper's Heating to install a heating and cooling system. Cooper's Heating performed the installation in October 1994. In October 1998, Bulldog Security filed a complaint against Cooper's Heating for breach of contract, breach of implied warranty of merchantability and breach of warranty of fitness for a particular purpose.
Specifically, Bulldog Security alleged that the return air duct work was seventy-five percent smaller than it should have been. As a result, Bulldog Security requested damages that it incurred for components in the system that needed repair — allegedly due to the shortage of return air. Bulldog Security also sought damages for the cost of a spare air conditioner that was purchased to help cool the building, and the cost of enlarging the duct work leading to the system installed by Cooper's Heating.
The trial commenced on August 23, 1999. The witnesses for Bulldog Security were part-owner Douglas Snyder and manager Steven Stonebraker. Bulldog Security submitted receipts for work performed on the system over the years. Robert Cooper appeared pro se to defend his business. He testified on his own behalf and called an expert witness to testify in his defense.
On August 25, 1999, the court entered judgment in favor of Cooper's Heating finding that Mr. Cooper did not perform in a negligent or unworkmanlike manner and that Mr. Cooper did not cause the need for the repairs listed in the receipts submitted to the court by Bulldog Security. Bulldog Security (hereinafter appellant) filed the within appeal and contends that the trial court's decision on the breach of contract claim was against the manifest weight of the evidence.
To litigate a successful breach of contract claim, the plaintiff has the burden to establish by a preponderance of the evidence that a contract existed, that plaintiff fulfilled his obligations, that defendant failed to fulfill his obligations and that damages resulted from this failure. McCullion v. Ohio Valley Mall (Feb. 10, 2000), Mahoning App. No. 97CA175, unreported. In service contracts, the failure to perform the service in a workmanlike manner using ordinary care constitutes the breach of an implied duty imposed by law. See Velotta v.Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376, 378-379
(dealing with the builder of a structure as the defendant). See, also,Burton v. Elsea, Inc. (Dec. 27, 1999), Scioto App. No. 97CA2556, unreported, 11. In determining this breach of duty, the trier of fact must assess fault and address factual issues on whether the defendant utilized proper materials and workmanlike skill and judgment. Mitchem v.Johnson (1966), 7 Ohio St.2d 66, 73.
Decisions of the trial court on these issues are treated with deference by the appellate court who shall not invade the province of the trial court as the fact-finder. Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 652-653. The underlying rationale for this deference is that the trier of fact occupies the best position from which to observe the witnesses' and their demeanor, gestures and voice inflections and use these observations to weigh the evidence and determine credibility. Myers v. Garson (1993), 66 Ohio St.3d 610, 615; Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Where a trial court's decision turns on credibility, it shall not be overturned by an appellate court if there is some competent and credible testimony supporting the trial court's findings and conclusions. Id.;C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. It is noteworthy that when dealing with manifest weight of the evidence in civil cases, the Supreme Court consistently overturns appellate court decisions to reverse and reminds the appellate courts that they are to be guided by a presumption that the trial court's findings are correct. See, e.g., Moskovitz, 69 Ohio St.3d at 653; Fabe v. Prompt Finance, Inc.
(1994), 69 Ohio St.3d 268, 276; Myers, 66 Ohio St.3d at 614; SeasonsCoal, 10 Ohio St.3d at 81; C.E. Morris, 54 Ohio St.2d at 281.
In the case at bar, appellant presented the testimony of its manager who stated that the air conditioning had never worked properly. Appellant also presented the testimony of one of its owners, Douglas Snyder. Mr. Snyder testified that if the temperature rose above seventy degrees, then a large chunk of ice would form on the system installed by Mr. Cooper and the building would not cool properly. He claimed that he often called Mr. Cooper but that he would rarely respond. Mr. Snyder submitted bills from other heating and cooling repair services. He claimed that components in the system kept breaking and that finally in 1998, one of the repair services discovered that the duct work was too small and that the shortage of air had been causing the problems in the system. Appellant did not present the testimony of this service provider on the reasons for the repair work performed or present other expert testimony on the cause of the problems. Instead, Mr. Snyder claimed that he was an expert as he had installed many air conditioning units in automobiles.
Conversely, Mr. Cooper testified that he has an associates degree in heating, air conditioning and refrigeration technology from Gateway Technical College in Pittsburgh. He approximated that he has been in the business for twenty-one years. Both Mr. Cooper and his secretary testified that they never received complaints from appellant that the system was freezing up. Receipts established that he performed service on the system in July 1996. Mr. Cooper stated that he replaced a compressor for appellant but that it was under warranty and that compressors have been known to fail due to internal mechanical problems.
Mr. Cooper claimed that the duct work was large enough for the air load entering the system. He noted that the entrance holes on the units were 20" x 21" and that he placed two units side by side so that the duct work entering the system was 40" x 21". He stated that Bulldog Security wanted to use the existing duct work through the walls and ceilings. He testified that the opening where air enters the duct work contains two 20" x 20" filters side by side which would mean that the opening is at least 40" x 20" plus space for the filters to attach to the duct. He opined that any increase in the return air duct from 40" x 20" at the filters to 40" x 21" at the system will not cause the system to freeze up or compressors to break.
Mr. Cooper also presented the testimony of Ron Cattrell who has been in the heating and cooling business for fifteen years. Mr. Cattrell confirmed that compressors can fail due to internal mechanical problems. He opined that there is nothing abnormal about combining two units to make a system and creating one duct for both units. He also opined that there was nothing unusual about the duct work in the case at hand. Mr. Cattrell then listed alternative reasons why a system might ice up, including dry air and dirty conditions.
As such, we have appellant claiming that it incurred damages as a result of appellee negligently failing to enlarge the return air duct work. To the contrary, we have appellee claiming that the services were performed in a workmanlike manner and that any damages were not caused by appellee. Accordingly, there exist two fairly reasonable views of the evidence. However, we may not choose the version that seems most reasonable and most credible to us. Rather, we must interpret the evidence consistent with the interpretation given to it by the trial court. Seasons Coal, 10 Ohio St.3d at 81. Since the trial court viewed the witnesses first hand, it was in a superior position to make the ultimate choice on whose opinion was more credible. Accordingly, we cannot reverse the trial court's judgment as being against the manifest weight of the evidence.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs, Waite, J., concurs.