In the Matter of the Liquidation of IDEAL MUTUAL INSURANCE COMPANY.

JAMES P. CORCORAN, Superintendent of Insurance of the State of New York, as Liquidator of IDEAL MUTUAL INSURANCE COMPANY, Appellant, v B. FREDERICK BECKER et al., Respondents.

First Department, September 8, 1988

**APPEARANCES OF COUNSEL**

*James Sandnes* of counsel *(Michael P. Tierney, Marc J.*

*Korpus, David S. Douglas* and *Peter Phillips* with him on the brief; *Cahill Gordon & Reindel, P. C.,* attorneys), for appellant.

*Michael V. Corrigan* of counsel *(Donald K. Stockdale, Jr.,* and *Cindy F. Forman* with him on the brief; *Simpson Thacher & Bartlett,* attorneys), for B. Frederick Becker and others, respondents.

*James F. Rittinger* of counsel *(Satterlee Stephens Burke & Burke,* attorneys), for Thomas A. Duffield and others, respondents.

*Luanne Surace* of counsel *(Dechert Price & Rhoads,* attorneys), for Robert A. Wachsler, respondent.

*A. Broadus Anderson, III,* of counsel *(Friedman, Levy & Anderson,* attorneys), for William R. Spence, respondent.

*Henry James Wallach* of counsel *(Hart & Hume,* attorneys), for Joseph B. Gibson, respondent.

*Bernard Hubscher* for Gerard Dolman, respondent.

*William P. Laino* of counsel *(Lynch Rowin Burnbaum & Crystal,* attorneys), for Frederick A. Vyn, respondent.

*Paul C. Kurland* of counsel *(Snow, Becker, Kroll, Klaris & Krauss, P. C.,* attorneys), for Thomas A. Ruden, respondent.

## OPINION OF THE COURT

ELLERIN, J.

This action, which charges various officers and directors of Ideal Mutual Insurance Co. with breach of their fiduciary duties and mismanagement leading to the company's insolvency, was instituted by the Superintendent of Insurance as liquidator of the company. The instant appeal concerns the validity of certain affirmative defenses interposed by the defendant officers and directors which are based upon assertions of misconduct by the Superintendent and/or the Department of Insurance in connection with Ideal's affairs.

Ideal Mutual Insurance Company (Ideal) was organized in 1944 pursuant to the New York Insurance Law and thereafter wrote substantial amounts of insurance in New York and other States. During its regular triennial examination of Ideal in 1984, the New York State Department of Insurance found that Ideal was insolvent in an amount over $166 million. The Superintendent of Insurance accordingly commenced proceed-

ings pursuant to Insurance Law article 74 to place Ideal into "rehabilitation". The management of Ideal did not oppose the proceedings and by order of the Supreme Court, New York County, entered December 26, 1984, Ideal was ordered rehabilitated in accordance with article 74 of the Insurance Law, and the Superintendent of Insurance was appointed as statutory rehabilitator. Subsequently, the court found that further efforts to rehabilitate Ideal would be futile and that Ideal was insolvent. Upon the Superintendent's motion, and again without opposition from the management of Ideal, Ideal was placed into liquidation and the Superintendent appointed statutory liquidator of Ideal, by order entered February 7, 1985.

Pursuant to the specific authorization of that order, and under the statutory authority of Insurance Law § 7405, the Superintendent as liquidator was vested with all rights and causes of action of the liquidated company and charged with the duty of prosecuting such causes of action for the public benefit of Ideal's policyholders and other creditors. In accordance therewith, the liquidator commenced the instant action against 21 of Ideal's officers and directors charging that they breached their fiduciary duty to the company by mismanaging its affairs.

The complaint alleges five causes of action. In the first cause, it is asserted that defendants knew or should have known that Ideal was insolvent but failed to so state in Ideal's financial reports and continued to write insurance that the company was unable to afford. The second cause of action alleges that the defendants failed to maintain appropriate financial records and controls, and the third asserts that they failed to control Ideal's managing general agents. The fourth cause of action charges the defendants with having procured reinsurance from "non-admitted reinsurers" without obtaining adequate security. In the fifth cause of action it is alleged that the defendants released Ideal's interest in "Intercontinental Insurance Managers, Inc." for wholly inadequate consideration. Plaintiff seeks to recover from the defendants compensatory damages stemming from Ideal's insolvency in the amount of at least $200 million, and also demands that defendants account for their waste of corporate assets.

Each of the defendants answered the complaint by denying its allegations and interposing numerous affirmative defenses and cross claims. The two affirmative defenses here in issue are both predicated upon allegations of the Superintendent's

own culpable conduct. On the one hand, it is asserted that the Superintendent's negligence constituted an independent intervening and superseding cause of the complained of losses which would serve to relieve defendants entirely of liability for their initial negligence. Alternatively, it is contended that such culpable conduct by the Superintendent would, at the least, reduce the amount of defendant's liability on the basis of comparative negligence.

Plaintiff moved pursuant to CPLR 3211 (b) to dismiss these two affirmative defenses, and also moved to vacate various discovery requests relevant thereto. The thrust of plaintiff's motion is that these affirmative defenses and discovery requests are "irrelevant" since they relate to conduct by the Superintendent in his capacity as the State official regulating the insurance industry (as head of the State Department of Insurance) and not in the capacity in which he brings this suit, that is, as liquidator of Ideal, and, further, that in his capacity as "regulator", he owed no duty to either Ideal or the defendants.

Defendants' answering papers, which amplify the rather sketchy pleading of the defenses, detail the acts of the Superintendent which it is contended are relevant to the action. As to the defense of "intervening and superseding cause", defendants assert that the Superintendent and his employees created the "insolvency" for which the defendants are being blamed and prevented the defendants from curing that "insolvency", thereby breaking the chain of causation linking defendants' alleged acts to the damages suffered. Defendants claim that earlier in 1984, before the rehabilitation and liquidation transpired, employees of the State Insurance Department interjected themselves into Ideal's affairs and prevented Ideal from implementing its plans to save the company. Specifically, defendants allege that the Superintendent's meddling sabotaged a commitment for the injection of new capital, frustrated Ideal's ability to disengage itself from the harmful managing general agent relationships, and prevented Ideal's procurement of security from reinsurers, undercutting Ideal's prior reinsurance arrangements, the matters specifically alleged in the complaint as causes of Ideal's insolvency.

As to the defense of comparative negligence, defendants reiterate the aforenoted allegations that the Department of Insurance dictated the course of action of Ideal's business, in effect taking de facto control of the company and bringing about its demise. The defendants also conclusorily claim,

without precise specification, that after the Superintendent took over Ideal as liquidator, he continued to take steps which were harmful to Ideal.

In its decision, the motion court held that "the issue of Corcoran's alleged culpability in Ideal's financial demise cannot be divorced from the defendant's cuplability *[sic]* and, therefore, Corcoran's actions both prior to and after assuming de jure control over Ideal are relevant to this action", and it indicated that at this stage of the action it was loathe to strike the defenses finding that "their removal would do more harm to defendants than their retention would aggrieve plaintiff".

■ ■ Upon a review of the record, we conclude that the denial of the motion to dismiss can be sustained only with respect to the defense of "intervening and superseding cause".

The standard of review on a motion to dismiss an affirmative defense pursuant to CPLR 3211 (b) is akin to that used under CPLR 3211 (a) (7), i.e., whether there is any legal or factual basis for the assertion of the defense. *(See, Winter v Leigh-Mannell,* 51 AD2d 1012.) The truth of the allegations must be assumed, and if under any view of the facts a defense is stated, the motion must be denied.

The Superintendent emphasizes that his role as plaintiff in this case is solely in his capacity as the court-appointed liquidator of Ideal and that, as such, he occupies a distinct legal persona differing in legal status from the persona of the Superintendent of Insurance, as the State official regulating the insurance industry, and argues that since he brings the instant action in his capacity as liquidator he cannot be held chargeable for any acts performed in his capacity as regulator. To the extent that it is relevant, the distinction that plaintiff draws is well taken. When acting as statutory liquidator of an insolvent insurer, the Superintendent is essentially a court-appointed private trustee who for all practical purposes takes the place of the insolvent insurer and stands in its shoes *(see, e.g., Bohlinger v Zanger,* 306 NY 228; *Matter of Kinney,* 257 App Div 496, *affd* 281 NY 840) and by virtue of the power derived from the statute and the court order appointing him, the Superintendent as liquidator acquires all property and rights of action of the liquidated company *(supra;* Insurance Law § 7405). The Superintendent, as liquidator of an insurance company, does therefore, occupy a legal personality separate and distinct from the Superintendent of Insurance as

the public official charged with regulating the industry generally.

The precise capacity, or status, in which the Superintendent appears as plaintiff herein is critically important with respect to the defense of contributory negligence. That defense relates to the negligent conduct of a *party* to the action, the plaintiff. *(See, e.g.,* CPLR 1411; Prosser and Keeton, Torts § 67 [5th ed].) The allegedly negligent acts of the Superintendent that the defendants here rely upon as the basis for his comparative negligence were committed by his Department, exercising its regulatory function, prior to the time he became the liquidator of Ideal. Consequently, those acts cannot be charged against him as the plaintiff liquidator of Ideal, a separate and distinct legal entity from the Superintendent of Insurance as regulator of the industry. Since the conduct involved was not that of *this* plaintiff, it cannot constitute his contributory negligence and the defense of comparative negligence must be stricken. While the defendants intimate that there may have been negligent acts by the Superintendent occurring after liquidation, which would be chargeable to the liquidator as a party and serve as a predicate for comparative negligence, they have failed to plead any facts whatsoever in support of these vague intimations.

A different situation prevails, however, with respect to the defense of "intervening and superseding cause". That defense is predicated upon the thesis that a subsequent act of a *third party* may interrupt the causal nexus between the defendant's initial negligence and the plaintiff's injury and thereby relieve the defendant of liability. If the intervening act so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant, the act of the third party is deemed a "superseding cause" and is a defense to liability. *(See, Kush v City of Buffalo,* 59 NY2d 26.) Here, the defendants have set forth with detail sufficient for this stage of the proceedings allegations of conduct by the Superintendent of Insurance, acting in his regulatory role, which occurred subsequent to the acts of misconduct charged against defendants in the complaint. Defendants assert that these subsequent acts by the Superintendent intervened and superseded any negligence on their own part so as to relieve them of liability for Ideal's demise.

"Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal con-

nection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence * * * If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus * * * Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315.)

The plaintiff liquidator argues that in his separate capacity as head of the Insurance Department (i.e., as regulator) he owed no duty to either defendants or Ideal and, therefore, his conduct as regulator cannot be used as a defense in any regard. This argument misapprehends the nature of the defense involved. Defendants are essentially asserting that their own conduct, even if negligent, cannot be held to be the responsible causative factor of the ultimate injury suffered by Ideal because the misconduct of a third party (i.e., the Superintendent's office as regulator) intervened to become a superseding cause which broke the causal nexus between defendants' conduct and Ideal's demise. In that context, the existence or nonexistence of a "duty" from the third party to either defendants or Ideal is irrelevant. While the existence of a duty would be critical if defendants were seeking to affirmatively charge the Superintendent, as regulator, with some liability, here defendants are merely seeking to insulate themselves from liability and have not asserted, by way of counterclaim or otherwise, any claim seeking contribution or other damages from the intervening actor.

Accordingly, the pleading of this affirmative defense was sufficient and properly upheld at this stage by the motion court. The question of whether these intervening acts constituted a "superseding cause" is a question to be determined by the trier of fact.

In opposing the defendants' discovery requests, plaintiff again relies on the position that the distinction between the Superintendent's dual identities should prevent the Superintendent's office as regulator from being required to comply with the discovery requests, since the Superintendent as regulator is not a party to the action. However, as the motion court correctly noted, examination of a party in a different

capacity may be had when its conduct in that other capacity has been placed in issue. *(E.g., Matter of Reis,* 48 Misc 2d 330.) Here, the conduct of the Superintendent prior to the time of liquidation has been placed squarely in issue. The plaintiff has under his control, in the Insurance Department, special and direct knowledge vital to the action and must disclose all information material and relevant to this action whether in his capacity as regulator or liquidator.

■ Similarly unsupportable is plaintiff's further contention that because the Superintendent, as regulator, is a separate and distinct third party, any deposition of his employees should be treated as depositions of "nonparty witnesses", which would be available to the defendants only by means of subpoena in compliance with CPLR 3106 (b), and that any documents in the Superintendent's possession should be discoverable only by means of court order in compliance with CPLR 3120 (b). The reason for the cited provisions regarding discovery of nonparty witnesses is to ensure that a nonparty has notice and an opportunity to contest the discovery. By this very proceeding, however, appellant has had that opportunity to contest the discovery sought. Reversal now would not serve to further either the statutory purposes nor any salutary purpose other than delay.

Accordingly, the order, Supreme Court, New York County (David H. Edwards, Jr., J.), entered September 29, 1987 which, *inter alia,* denied the plaintiff's motion to dismiss the affirmative defenses of comparative negligence and of intervening and supervening cause asserted by the various defendants, and which denied plaintiff's motion for a protective order pursuant to CPLR 3103 and granted the defendants' cross motion to compel certain disclosure, should be modified, on the law, to dismiss those affirmative defenses which allege comparative negligence, and otherwise affirmed, without costs.

KUPFERMAN, J. P., ROSS, KASSAL and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on September 29, 1987, unanimously modified, on the law, to dismiss those affirmative defenses which allege comparative negligence, and otherwise affirmed, without costs and without disbursements.