Fabe, Superintendent of Insurance, Appellant,
*v.* Prompt Finance, Inc., Appellee.

[Cite as *Fabe v. Prompt Finance, Inc.* (1994), 69 Ohio St.3d 268.]

(No. 93–274—Submitted February 22, 1994—Decided May 11, 1994.)

272

*Lee I. Fisher,* Attorney General; *Emens, Kegler, Brown, Hill & Ritter Co., L.P.A., William J. Brown, John P. Brody, Richard W. Schuermann* and *Paul L. Hokemeyer,* for appellant.

*Jones, Day, Reavis & Pogue, Fordham E. Huffman* and *Sara M. Allswede,* for appellee.

---

DOUGLAS, J. This appeal presents two questions for our consideration. The first issue concerns the authority of the Superintendent to prohibit transfers of property where the transfer would be in violation of a supervision order, and the authority of a court of common pleas to issue a ruling necessary to enforce an order of the Superintendent. The second question is whether the trial court erred in concluding that the guaranty agreement, as secured by the letter of credit, was supported by adequate consideration.

I

R.C. Chapter 3903 is referred to as " 'the insurers supervision, rehabilitation, and liquidation act.' " R.C. 3903.02(A). If the Superintendent has reasonable

cause to believe that the continuance of an insurer's business could be hazardous "to the public or to the holders of its policies or certificates of insurance," the Superintendent may order that the insurer be placed under supervision. R.C. 3903.09(B) and (C). Further, the Superintendent may, under certain circumstances, file a complaint in the court of common pleas for an order authorizing the rehabilitation of an insurance company. R.C. 3903.12. See, also, R.C. 3903.-09(D). However, if the Superintendent determines that rehabilitation of an insurer "would substantially increase the risk of loss to creditors, policyholders, or the public, or would be futile," the Superintendent may file a motion with the trial court for an order of liquidation. R.C. 3903.16(A).[3]

The General Assembly enacted R.C. Chapter 3903 for the specific purpose of protecting "the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers * * *." R.C. 3903.02(D). See, also, *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042, paragraph two of the syllabus, wherein a majority of this court held, in part, that R.C. Chapter 3903 was enacted for the benefit of the "general citizenry." Moreover, to ensure that the purpose of the Act is effectuated, R.C. 3903.02(C) sets forth that the provisions of R.C. Chapter 3903 are to be liberally construed.

The Superintendent contends that explicit statutory authority exists to prohibit the transfer of payments ($215,460.69) from Prompt to Phorum Re. The Superintendent asserts that the transfers were executed in violation of the March 22, 1990 supervision order and, consequently, the trial court properly concluded that Prompt could not offset the payments against any indebtedness of Prompt due OGICO. In support of his position, appellant relies on R.C. 3903.05, 3903.09(C) and (I).

The General Assembly has conferred upon the Superintendent and a trial court broad discretionary and equitable powers relating to the supervision, rehabilitation and liquidation of insurance companies. R.C. 3903.09(C)(5) provides that an insurer who has been placed under supervision may be prohibited from transferring any property *absent prior approval* of the Superintendent. Further, the Superintendent may file a complaint or move the trial court to issue a temporary restraining order, preliminary or permanent injunction or "*such other orders as the court considers necessary and proper to enforce a supervision order.*" (Emphasis added.) R.C. 3903.05(A). R.C. 3903.05 also gives a court of general jurisdiction a broad spectrum of powers. R.C. 3903.05(A) provides that a trial court, upon motion of a receiver, conservator, rehabilitator or liquidator, may issue an order which the court considers "necessary and proper" to prevent, *inter*

---

3. On August 31, 1990, OGICO was found to be insolvent and placed in liquidation.

*alia,* the transaction of further business; the transfer of property; the interference with the receiver, conservator, rehabilitator, liquidator or any proceeding under R.C. Chapter 3903; the obtaining of preferences; and "[a]ny other threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders * * *." See R.C. 3903.05(A)(1), (2), (3), (7) and (11).

In the case at bar, payments totalling $215,460.69 were made by Prompt to Phorum Re *at the direction* of OGICO. The payments were made *after* OGICO had been placed under supervision. OGICO, Prompt and Phorum Re are closely connected companies. The record indicates that Prompt owed money to OGICO for premiums Prompt had financed, that OGICO owed money to Prompt for unearned premiums on cancelled policies, and that OGICO was indebted to Phorum Re for aviation expenses. Further, the payments to Phorum Re by Prompt were made in accordance with a "memorandum of understanding" between OGICO and Prompt. The memorandum provided " * * * that any and all transfers that PROMPT makes to Phorum [Re] on OGICO's behalf releases PROMPT from that same liability to OGICO and that PROMPT's payment to Phorum [Re] shall be construed to be the same as a payment to OGICO from PROMPT."

The trial court held, and we agree, that the transfer of payments made by Prompt to Phorum Re on behalf of OGICO violated the Superintendent's March 22, 1990 order. We further agree with the trial court that the transfer of payments were "attempts indirectly to do that which was directly prohibited" by the supervision order and, therefore, Prompt may not offset monies which it may owe OGICO.

The court of appeals found that Becker–Jones had knowledge OGICO was under supervision and that he promptly informed Wickfield of OGICO's status. The appellate court also found that Prompt's vice president was aware OGICO was under supervision. The court of appeals agreed that the payments by Prompt to Phorum Re totalling $215,460.69 violated the supervision order. However, the court of appeals concluded that the trial court erred in holding that payments to Phorum Re by Prompt on OGICO's behalf were attempts to circumvent the supervision order. The court of appeals held that before such a conclusion can be reached, the trial court must determine whether Prompt had knowledge of the contents of the March 22, 1990 supervision order, which precluded any transfers of property absent prior approval by the Superintendent. Prompt agrees with the court of appeals' conclusion and urges that the Superintendent's exclusive remedy is set forth in R.C. 3903.09(J). We disagree.

R.C. 3903.09(J) provides that any person, including those described in R.C. 3903.06(A), who knowingly violates an order of the Superintendent thereby

resulting in a decrease in the net worth of an insurer or causes the insurer to suffer a loss may be liable for such decrease or loss. This section provides the Superintendent with a civil cause of action for damages against those who knowingly violate an order of the Superintendent. However, this section is clearly not the only remedy available to the Superintendent. To hold otherwise would be to ignore additional rights given to the Superintendent by law. Most notably, R.C. 3903.09(I) provides that the Superintendent may move the trial court for such order that " * * * the court considers *necessary and proper* to enforce a supervision order." (Emphasis added.)

Given the inexorably intertwined relationship between Prompt and OGICO and the directors and officers involved, even assuming that R.C. 3903.09(J) provides the exclusive remedy available to the Superintendent, it cannot be seriously argued that Prompt did not have sufficient knowledge so as to comply with R.C. 3903.09(J). Wickfield, Prompt's president, was aware that OGICO was under supervision. Prompt's vice president was also aware of OGICO's status. Becker–Jones also had knowledge of the order. Further, it is apparent that Hardy, a director of Prompt and OGICO, was also intimately involved in the management of OGICO and other related affiliates. Moreover, at oral argument, counsel for Prompt conceded that Hardy was aware of the March 22, 1990 order.

The statutory scheme of R.C. Chapter 3903 is intended to protect the rights of insureds, policyholders, creditors, and the public generally. The Act was not intended to protect an insider affiliate such as Prompt. Accordingly, we hold that to protect the interests of policyholders, creditors, claimants, and the public generally, the Superintendent of Insurance has the authority to issue an order placing an insurer under supervision. An order of the Superintendent may require an insurer to obtain approval from the Superintendent prior to the transfer of any of the insurer's property. Further, pursuant to R.C. 3903.09(I), a court of common pleas has the authority to issue a ruling which is "necessary and proper" to enforce an order of the Superintendent of Insurance.

## II

The Superintendent contends, and the trial court held, that the guaranty agreement, as secured by the letter of credit, was not supported by fair consideration. The trial court concluded that the agreement and letter of credit, when viewed under the totality of the circumstances, did not constitute an exchange of fair equivalent value between OGICO and Prompt. An exchange of fair equivalent value was not present, reasoned the trial court, because OGICO received disproportionately less value than the obligation it incurred.

R.C. 3903.26(A) provides, in part, that every transfer or obligation incurred by an insurer within one year of the filing of a successful complaint for rehabilitation

or liquidation is fraudulent as to then existing or future creditors if made *without fair consideration.* R.C. 3903.01(H) provides that:

" 'Fair consideration' is given for property or obligation when either of the following apply:

"(1) When in exchange for such property or obligation, *as a fair equivalent therefor,* and in good faith, property is conveyed, services are rendered, an obligation is incurred, or an antecedent debt is satisfied;

"(2) When such property or obligation is received in good faith to secure a present advance or antecedent debt *in an amount not disproportionately small as compared to the value of the property or obligation obtained.*" (Emphasis added.)

The court of appeals held that the trial court did not apply R.C. 3903.26(A) and 3903.01(H) correctly when it determined whether fair equivalent value was exchanged between OGICO and Prompt. In reaching this conclusion, the court of appeals stated that "[f]air equivalent value does not necessarily mean equal value, and the court must look at the total circumstances involved in the transaction. What is exchanged does not have to be equal, but can be *substantially* equivalent as long as what is exchanged is not disproportionately small." (Emphasis *sic.*)

In *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745, we recently reaffirmed that: "[W]here the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Having reviewed the entire record in the instant case, we find that there exists competent and credible evidence supporting the findings of fact and conclusions of law of the trial court.

We agree with the trial court that the major benefactor of the guaranty agreement was Prompt. The guaranty agreement and letter of credit were a condition precedent to Close Brothers' obtaining a fifty percent ownership interest in Prompt. As a result of Close Brothers' participation, Prompt was able to obtain a beneficial infusion of capital, a revolving credit facility, and the ability to pay off certain of its outstanding loans. In contrast, OGICO was required to pay a $1 million debt owed by its parent company, pay a $10,000 fee and pledge approximately $1 million in assets. The trial court noted that in exchange for signing the guaranty agreement, OGICO simply received more accessible premium financing. It appears that OGICO already had existing opportunities available to it from other companies for financing insurance premiums. Hence, it is apparent that the court of appeals impermissibly substituted its judgment for that of the trial court.

## III

For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court in *all* respects.

*Judgment reversed.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.