COVINGTON, Superintendent of Insurance, in his Capacity as Liquidator
of Personal Physician Care, Inc., Appellee and Cross–Appellant,

v.

SAFFOLD et al., Appellants and Cross–Appellees.

[Cite as Covington v. Saffold, 150 Ohio App.3d 126, 2002-Ohio-6280.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–89.

Decided Nov. 19, 2002.

Betty D. Montgomery, Attorney General, Scott Myers and Lawrence D. Pratt, Assistant Attorneys General, for appellee.

Chester, Willcox & Saxbe, L.L.P., Richard A. Frye, David J. Butler and Sarah D. Morrison, for appellant Oscar Saffold, M.D.; Wolman, Genshaft & Gellman, Nelson E. Genshaft and Susan B. Gellman, for appellant Wilton Savage.

DESHLER, Judge.

{¶ 1} This is an interlocutory appeal and cross-appeal from a decision and judgment entry by the Franklin County Court of Common Pleas. The matter arises out of the liquidation by the Ohio Department of Insurance ("ODI") of a health maintenance organization ("HMO") known as Personal Physician Care, Inc. ("PPC"), a company organized and operated by President and Chief Executive Officer Oscar Saffold, M.D., and Chief Financial Officer Wilton Savage ("appellants").

{¶ 2} On March 26, 1999, the superintendent of ODI, acting in his capacity as liquidator of PPC, filed an action in the trial court seeking to recover damages against appellants for breach of fiduciary duty, and for negligence and gross negligence. Among other allegations, the lawsuit asserted that Saffold gave illegal preferential payments to several hospitals and other health-care providers during 1997 and 1998. The lawsuit followed an extended period of time during which PPC had been subjected to increasing involvement by ODI in its organization and operations, first under supervision by ODI, then in a failed attempt at rehabilitation of the HMO, and, finally, upon the "death" of the company, in liquidation.

{¶ 3} During the pendency of the action, appellants sought access to various documents and work papers that had been generated both by PPC during its daily operations, and by ODI during its supervision, attempted rehabilitation, and liquidation of PPC. On December 20, 2001, the trial court issued a decision and judgment entry, which, inter alia, granted numerous motions to compel discovery by appellants of various documents in ODI's possession for which ODI had claimed a privilege. However, in a nunc pro tunc entry, the trial court held that an in-camera inspection of work papers prepared by ODI's own examiners resulted in a finding that such papers were protected pursuant to R.C. 3901.48 and thus not discoverable.

{¶ 4} Appellants appeal from this decision and assign the following as error:

{¶ 5} "The trial court erred in holding that work papers prepared by examiners for the Ohio Department of Insurance were legally privileged, pursuant to § 3901.48(B) and (C), Revised Code, and not discoverable in this action."

{¶ 6} ODI has filed a cross-appeal in which it assigns the following cross-assignments of error:

{¶ 7} "[1] First Cross–Assignment of Error: The trial court erred by ignoring the plain language of R.C. 3901.48(A) and concluding that outside auditor work papers are not privileged and are subject to release by subpoena.

{¶ 8} "[2] Second Cross–Assignment of Error: The trial court erred by narrowly construing R.C. 3903.11 as encompassing only documents pertaining to judicial proceedings.

{¶ 9} "[3] Third Cross–Assignment of Error: The trial court erred by denying the department's request for an evidentiary hearing."

{¶ 10} At issue in appellants' assignment of error is the decision of the trial court, upon an in-camera inspection and pursuant to R.C. 3901.48(B) and (C), that the work papers prepared by ODI's own examiners (as opposed to those prepared by PPC's accounting firm) are "privileged and not discoverable, despite the death of PPC." By contrast, ODI's first assignment of error on cross-appeal alleges that the trial court erred in holding that work papers resulting from the audit of PPC by Ernst & Young, a certified public accounting firm retained by PPC to review its accounts, under R.C. 3901.48(A), were not privileged and therefore subject to discovery by appellants.

{¶ 11} At all times relevant to this action, R.C. 3901.48(B) provided that the work papers of the superintendent deriving from an examination of an insurer's accounts, operations, and/or other aspects of the business are "confidential and are not a public record" and, in addition, "are not subject to subpoena and shall not be made public by the superintendent or any other person." Similarly, former R.C. 3901.48(C) provided that the work papers of the superintendent resulting from the conduct of a performance regulation examination are confidential, not a public record, not subject to subpoena, and shall not be made public by the superintendent or any other person. Finally, former R.C. 3901.48(A) addressed the work papers of a certified public accountant performing an audit of an insurer, and stated, in part, that "[t]he original work papers or any copies of them, whether in possession of the certified public accountant or the department of insurance, are confidential and are not a public record," not subject to subpoena and shall not be made public by the superintendent or any other person.[1]

---

1. These statutes have since been revised to include the words "and privileged" after the word "confidential." It is possible to interpret the amendment to signal an intent by the legislature

{¶ 12} Appellants argue that R.C. 3901.48 is not a privilege statute per se, but, rather, is intended to protect the insurers themselves by preventing ODI from releasing or publicizing documents within its possession. According to appellants, work papers generated in the process of conducting examinations can be confidential and shielded from the public record without necessarily being privileged. Appellants also assert that even if a privilege exists, ODI's interpretation of what constitutes "work papers" is too broad, and would essentially prevent all pretrial discovery, and interfere with questioning of witnesses during trial. Appellants urge this court to accept a narrower view of what constitutes privileged matter, if indeed any work papers should be deemed privileged, and would have us draw a distinction between records of an insurer not in liquidation and those of an insurer subject to liquidation, with the records of the insurer in liquidation being no longer subject to the privilege.

{¶ 13} Finally, appellants assert that even if a privilege exists, and even if the privilege may be found to apply to the work papers sought herein, the subject-matter waiver doctrine operates to release the documents to appellants as being essential to their defense. The test to be applied in deciding whether subject-matter waiver applies is set forth in *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574, a case that has been followed by several Ohio courts, including this court. See *H & D Steel Serv., Inc. v. Weston, Hurd, Fallon, Paisley & Howley* (July 23, 1998), Cuyahoga App. No. 72758, 1998 WL 413772; *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 612 N.E.2d 442; *Ward v. Graydon, Head & Ritchey* (2001), 147 Ohio App.3d 325, 770 N.E.2d 613; *Schottenstein, Zox & Dunn v. McKibben,* Franklin App. No. 01AP–1384, 2002-Ohio-5075, 2002 WL 31122804.

{¶ 14} Under *Hearn,* a privilege is impliedly waived if:

{¶ 15} "* * * (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. * * * " *Hearn* at 581.

{¶ 16} We agree with appellants that the instant facts would clearly support application of the *Hearn* doctrine. First, ODI's assertion of the privilege is the result of its affirmative act of placing PPC in liquidation and bringing suit

to settle once and for all the question of whether these types of work papers are privileged. Although a finding of no privilege under the former version of the statute might have limited stare-decisis effect due to the amendment, there does not seem to be anything on the face of former R.C. 3901.48 precluding such a decision. Nevertheless, our decision does not reach this question because we conclude that ODI impliedly waived any privilege it might have had.

against appellants. Clearly, the work papers might be relevant to ODI's claims against appellants for breach of fiduciary duty, negligence, and punitive damages, and application of the privilege could deny appellants access to information vital to their defense.

{¶ 17} ODI's first assignment of error on cross-appeal urges us to find error with the trial court's reasoning that while a privilege did apply to the work papers resulting from ODI's own examination process, the same privilege did not attach to the work papers generated by the outside accounting firm. According to ODI, the audit by Ernst & Young, while paid for by PPC, was not prepared for the benefit of PPC but to fulfill its obligation to ODI pursuant to R.C. 1751.32, and that, pursuant to statute, insurance companies are financially responsible for all examinations, whether they are done by outside firms or by ODI itself. Thus, ODI asserts that it did not matter that the work was done by an independent firm at PPC's expense, the work papers were a part of and were prepared pursuant to its regulation of PPC, and therefore a privilege should attach.

{¶ 18} The subject-matter waiver doctrine would also apply to the work papers generated by an independent accounting firm, since the same set of circumstances gave rise to ODI's assertion of the privilege, ODI put the audit at issue by making it relevant to the case, and because the audit may contain information vital to appellants' defense. Therefore, we do not address whether such independent audits are privileged as a matter of law, but, rather, find that in this case, under these facts, ODI waived any privilege it might have had by filing suit.

{¶ 19} ODI also draws a distinction between documents which are part of the liquidation estate and those controlled by ODI. According to ODI, there is no dispute that appellants have an interest in and are entitled to access to documents held by the liquidation estate. What ODI contests is giving appellants access to documents that are controlled by ODI, documents that ODI contends are not necessary to appellants' defense and that should not be discoverable because allowing access to them would negatively affect ODI's regulation of other insurers and, indeed, ODI's function as a state agency. ODI asserts that it would not release such documents to the liquidator, either, never mind that the liquidator is its own superintendent. However, ODI seems to classify any documents it does not want appellants to see (but which appellants nevertheless contend are vital to their case) as those that are in its control and thus privileged, and classifies all other documents as part of the liquidation estate. The characterization of documents should not be left up to ODI, but was properly in the hands of the trial court.

{¶ 20} ODI asserts that appellants are seeking the work papers in order to bolster their defense of regulatory negligence, which is not a recognized

defense under Ohio law. This court is not in a position to assess appellant's motives in seeking discovery of information which is held by ODI, nor should ODI be doing so. The question of what appellants would do with the information they seek is not an issue before this court, nor was it before the trial court. Rather, the question is whether appellants are entitled to access to information that may assist their defense, and we find that appellants are so entitled, regardless of what that defense may be. Trial strategy should be left to appellants and their counsel, and should not be anticipated by the courts. Under ODI's view, a state agency could take control of a privately owned company, put it out of business, sue its officers for failing to run the company properly, and deny the officers access to documents that could allow them to defend themselves. Such a result would shield the state agency from judicial scrutiny, remove all accountability, and invite error and abuse. We know of no state interest compelling enough to justify concealment of records to the degree apparently sought by ODI.

{¶ 21} Having concluded that the subject-matter waiver doctrine would allow appellants access to the work papers generated by ODI's examination of PPC's business records and would allow appellants access to the work papers generated by the independent accounting firm's audit, we sustain appellants' assignment of error and overrule ODI's first assignment of error on cross-appeal.

{¶ 22} ODI's second assignment of error on cross-appeal urges that the trial court erred in interpreting R.C. 3903.11 as having no applicability to this discovery dispute. That statute reads:

{¶ 23} "In all proceedings and judicial reviews thereof under sections 3903.09 and 3903.10 of the Revised Code, all records of the insurer, other documents, and all department of insurance files and court records and papers, so far as they pertain to or are a part of the record of the proceedings, shall be and remain confidential except as is necessary to enforce compliance with those sections, unless and until the court of common pleas, after hearing arguments from the parties in chambers, shall order otherwise, or unless the insurer requests in writing that the matter be made public. Until such court order or such request from the insurer, all papers filed with the clerk of the court shall be held by the clerk in a confidential file."

{¶ 24} The trial court held that this statute is not a privilege statute and found that "[b]ased on representations by [appellants] that there were no proceedings and/or judicial review under either R.C. 3903.09 or 3903.10 of either PPC or Saffold and Savage during the period when PPC was under supervision by the Superintendent, this statute has no applicability to this discovery dispute." ODI maintains that the trial court erred in making this statement, since according to ODI, the statute is a privilege statute, and since the privilege is not limited to the context of judicial proceedings.

{¶ 25} While we agree with ODI's interpretation of the statute as having applications beyond those recognized by the trial court, ODI's position that the trial court's decision, if allowed to stand, would result in a loss of confidentiality in all cases where ODI places an insurer under supervision is too extreme. ODI admits that the statute was intended to protect an insurer from the harmful effects that may attend upon a declaration of supervision should that status become widely known, and we agree that in that instance confidentiality is an important tool in the effort to restore an insurer to financial health. However, in the case at bar, PPC is in liquidation, and while appellants may be seeking records that were compiled during a period in which PPC was being supervised by ODI, the concerns about publicity and privacy that PPC may have had during supervision are no longer a problem because the company is no longer in business. Moreover, because the privacy interests protected by the statute are those of the insurer, the ability to waive confidentiality would arguably rest with the insurer, or, in the case of a defunct insurer, with its former officers. In other words, if PPC no longer has a need for privacy, why should ODI? Even if the trial court rejected ODI's argument for the wrong reasons, it ultimately reached the right conclusion and so we find no error. ODI's second assignment of error on cross-appeal is overruled.

{¶ 26} ODI's third assignment of error on cross-appeal urges that the trial court erred in denying ODI's request for an evidentiary hearing. According to ODI, an evidentiary hearing could have clarified some of the discovery issues raised in this appeal and cross-appeal, and would have prevented the errors ODI claims were committed by the trial court. Appellants counter that a ruling on a request for an evidentiary hearing is not a final appealable order and should not be entertained by this court.

{¶ 27} Regardless of whether the trial court's ruling was a final appealable order, we do not see how a decision of the trial court to proceed without conducting an evidentiary hearing can be viewed as reversible error. "Management of the discovery process lies solely within the sound discretion of the trial court and absent an abuse of that discretion, a decision granting or denying a discovery request will not be disturbed by the reviewing court." *Glick v. Marler* (1992), 82 Ohio App.3d 752, 758, 613 N.E.2d 254, citing *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659. An abuse of discretion implies a decision which is not merely wrong, but arbitrary, unreasonable, or unconscionable. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24. The trial court's lengthy decision addressing all of the discovery motions indicates that the court gave a great deal of consideration to arguments by both sides, and there is nothing to indicate that the court acted arbitrarily, unreasonably, or unconscionably in

refusing ODI's request for an evidentiary hearing. The fact that ODI disagrees with the court's decision does not lead to the conclusion that the court erred. ODI's third assignment of error on cross-appeal is overruled.

{¶ 28} Appellants' assignment of error is sustained, ODI's first, second, and third assignments of error on cross-appeal are overruled, the judgment of the Franklin County Court of Common Pleas is reversed in part and affirmed in part, and the cause is remanded for further proceedings in light of the decision rendered herein.

Judgment affirmed in part,
reversed in part
and cause remanded.

PETREE and BROWN, JJ., concur.