BENJAMIN, Superintendent of Insurance, Appellant,

v.

SAWICZ et al., Appellees.

[Cite as *Benjamin v. Sawicz,* 159 Ohio App.3d 265, 2004-Ohio-6121.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–1080.

Decided Nov. 18, 2004.

Jim Petro, Attorney General, Lawrence D. Pratt, and W. Scott Myers; Kegler Brown Hill & Ritter Co., L.P.A., Melvin D. Weinstein, Loriann E. Fuhrer, and Richard W. Schuermann Jr., for appellant.

Schottenstein Zox & Dunn, John C. McDonald, Robert H. Nichols, and Russell J. Kutell, for appellees Thomas T. Sawicz, Richard F. Sawicz, Gaylia R. Meitzen, Bradley Goldstein, Michael H. Woolever, and Therese L. Byrd.

Chester Willcox & Saxbe, L.L.P., Richard A. Frye and Gerhardt A. Gosnell II, for appellees Spencer Koppel and Koppel & Associates, Inc., d.b.a. QED Consulting Group.

Frost Brown Todd, L.L.C., Greg E. Mitchell, and Jeffrey G. Rupert, for appellees John C. Crane, Davis Fulkerson, Philip O'Connor, and James B. Stradtner.

BROWN, Judge.

{¶ 1} This is an appeal by plaintiff-appellant, Ann H. Womer Benjamin, Superintendent of Insurance and successor to J. Lee Covington II,[1] from a journal entry of the Franklin County Court of Common Pleas, ordering appellant, whether acting in her role as Director of the Ohio Department of Insurance or as liquidator of American Chambers Life Insurance Company ("ACLIC"), to respond to various discovery requests propounded by certain defendants-appellees.

{¶ 2} ACLIC was a life and accident and health insurance company that transacted business in Ohio. Because of the financial condition of ACLIC, appellant filed an action in the Franklin County Court of Common Pleas on March 13, 2000, seeking to place the company in rehabilitation pursuant to R.C. 3903.13. On May 8, 2000, the trial court issued a final order of liquidation and appointment of liquidator, finding that ACLIC was insolvent and that further attempt to rehabilitate it would substantially increase the risk of loss to its policyholders and creditors and the public, and/or would be futile.

---

1. At the time appellant initiated this action, J. Lee Covington was the Superintendent of Insurance. Subsequent references to "appellant" occasionally include Ann H. Womer Benjamin's predecessor, Covington.

{¶ 3} On May 7, 2002, appellant's predecessor, "as Superintendent of the Ohio Department of Insurance * * * and, in his capacity as Liquidator * * * of ACLIC," filed a complaint in the instant action against defendants-appellees, Thomas T. Sawicz, Richard F. Sawicz, Gaylia R. Meitzen, Timothy J. Herr, Bradley Goldstein, Therese L. Byrd, Davis Fulkerson, James B. Stradtner, John C. Crane, Phillip O'Connor, Michael H. Woolever, Spencer Koppel, and QED Consulting Group. The complaint alleged that ACLIC's financial condition had deteriorated rapidly in 1998 and 1999, resulting in ACLIC's insolvency no later than March 13, 1999, and that the existence and extent of ACLIC's financial condition, as well as its insolvency, had been concealed and/or negligently not disclosed to the Ohio Department of Insurance ("ODI"), ACLIC's policyholders and creditors, and/or the public. More specifically, the complaint alleged that ACLIC filed an annual statement on December 31, 1998, and a quarterly statement on March 31, 1999, both of which improperly and materially misstated ACLIC's financial condition. The superintendent contended that the conduct of the defendant officers and directors of ACLIC constituted a breach of fiduciary duties, causing harm to its policyholders and creditors and the public.

{¶ 4} On July 17, 2003, the trial court conducted a hearing to address certain discovery issues. The parties subsequently filed briefs addressing those matters, including appellees' contentions that appellant had failed to properly answer interrogatories.

{¶ 5} On October 15, 2003, the trial court issued a decision and journal entry addressing the discovery disputes. In its entry, the trial court held in part that appellant, "whether acting as Director of the Ohio Department of Insurance, or as Liquidator of American Chambers Life Insurance Company * * * shall answer the various discovery demands and requests propounded by the defendants."

{¶ 6} Appellant has appealed from the trial court's entry, setting forth the following single assignment of error for review:[2]

> The trial court erred by ordering the superintendent of insurance, acting in this case solely in her capacity as liquidator of the American Chambers Life Insurance Company, to respond to discovery requests both in that capacity and in her statutorily separate capacity as Director of the Ohio Department of Insurance.

{¶ 7} On appeal, appellant challenges the trial court's decision ordering her to respond to discovery requests, including answers to interrogatories, arguing that the statutory role of the superintendent as liquidator is separate and distinct

---

2. The superintendent "in her capacity as Director of Insurance" has filed an amicus brief in support of appellant's assignment of error.

from the role the superintendent assumes as regulator and director of ODI.[3] Thus, appellant maintains, the trial court erred in requiring her to provide discovery in her capacity as director of ODI when, it is asserted, she brought the instant action solely in her separate capacity as liquidator.

{¶ 8} In general, "Ohio has a liberal discovery policy which, subject to privilege, enables opposing parties to obtain from each other all evidence that is material, relevant and competent, notwithstanding its admissibility at trial." *Fletcher v. Nationwide Mut. Ins. Co.*, Darke App. No. 02CA1599, 2003-Ohio-3038, 2003 WL 21360646, at ¶ 14. Further, "[m]anagement of the discovery process is within the sound discretion of the trial court." Id.

{¶ 9} In addressing appellant's capacities argument, we initially note the general statutory framework under which the superintendent of insurance operates. R.C. 3901.011 sets forth the general powers and duties of the superintendent of insurance, and states:

> The superintendent of insurance shall be the chief executive officer and director of the department of insurance and shall have all the powers and perform all the duties vested in and imposed upon the department of insurance. The superintendent of insurance shall see that the laws relating to insurance are executed and enforced.

{¶ 10} Pursuant to the above provision, the superintendent of insurance "is granted wide latitude and authority in overseeing insurance companies. It is his mandatory duty to execute and enforce the laws relating to insurance." *Strack v. Westfield Cos.* (1986), 33 Ohio App.3d 336, 338, 515 N.E.2d 1005.

{¶ 11} In addition, the superintendent of insurance is authorized to institute actions to rehabilitate or liquidate insurance companies under R.C. Chapter 3903. The legislature enacted R.C. Chapter 3903 "for the specific purpose of protecting 'the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers.'" *Fabe v. Prompt Fin., Inc.* (1994), 69 Ohio St.3d 268, 273, 631 N.E.2d 614, quoting R.C. 3903.02(D).

{¶ 12} R.C. 3903.12 provides that the superintendent of insurance "may file a complaint in the court of common pleas for an order authorizing him to rehabilitate a domestic insurer or an alien insurer domiciled in this state" on the basis of various enumerated grounds. R.C. 3903.13(A) states:

---

3. On November 5, 2003, defendants-appellees Crane, O'Connor, and Stradtner filed a motion to dismiss this appeal, asserting that the trial court's entry regarding the discovery issues was not a final-appealable order. By memorandum decision rendered on December 16, 2003, this court denied appellees' motion to dismiss.

An order to rehabilitate the business of a domestic insurer, or an alien insurer domiciled in this state, shall appoint the superintendent of insurance and his successors in office the rehabilitator, and shall direct the rehabilitator forthwith to take possession of the assets of the insurer, and to administer them under the general supervision of the court. The rehabilitator is vested by operation of law with the title to all property, contracts, and rights of action of the company as of the date of the entry of the judgment of the court order directing rehabilitation.

{¶ 13} As rehabilitator, the superintendent "may take such action as he considers necessary or appropriate to reform and revitalize the insurer." R.C. 3903.14(B). If it appears that there has been criminal or tortious conduct, the rehabilitator may "pursue all appropriate legal remedies on behalf of the insurer." R.C. 3903.14(C). Upon determining that "reorganization, consolidation, conversion, reinsurance, merger, or other transformation of the insurer is appropriate, he shall prepare a plan to effect such changes." R.C. 3903.14(D).

{¶ 14} In instances in which the superintendent of insurance believes that the rehabilitation of an insurer "would substantially increase the risk of loss to creditors, policyholders, or the public, or would be futile, the superintendent may file a motion in the court of common pleas for an order of liquidation." R.C. 3903.16. The powers of the liquidator are set forth under R.C. 3903.21, and include the power to (1) "[c]ollect all debts and moneys due and claims belonging to the insurer" (R.C. 3903.21[A][6]); (2) "[c]onduct public and private sales of the property of the insurer" (R.C. 3903.21[A][7]); (3) "[a]cquire, hypothecate, encumber, lease, improve, sell, transfer, abandon, or otherwise dispose of or deal with, any property of the insurer" (R.C. 3903.21[A][9]); and (4) "[p]rosecute any action which may exist in behalf of the creditors, members, policyholders, or shareholders of the insurer against any officer of the insurer or any other person" (R.C. 3903.21[A][13]).

{¶ 15} In the present case, the trial court, in ordering appellant to respond to the discovery requests of appellees regardless of whether the requested materials are possessed by appellant in her role as director or liquidator, relied upon two cases previously decided by this court: *Covington v. Saffold,* 150 Ohio App.3d 126, 2002-Ohio-6280, 779 N.E.2d 838, and *Covington v. MetroHealth Sys.,* 150 Ohio App.3d 558, 2002-Ohio-6629, 782 N.E.2d 624.

{¶ 16} In *Saffold,* the superintendent of insurance, acting in his capacity as liquidator of Personal Physician Care, Inc. ("PPC"), filed a complaint in the trial court seeking damages against appellants for breach of fiduciary duty, negligence, and gross negligence. During the proceedings, appellants sought access to certain documents and work papers generated by PPC in its daily operations and by ODI during its "supervision, attempted rehabilitation, and liquidation" of

PPC. *Saffold,* supra, 150 Ohio App.3d 126, 2002-Ohio-6280, 779 N.E.2d 838, at ¶ 3. The trial court issued a decision granting numerous motions to compel discovery by appellants of documents in ODI's possession for which it had claimed a privilege. Id.

{¶ 17} On appeal, ODI filed a cross-assignment of error, asserting that the trial court erred in holding that a privilege did not attach to work papers generated by an outside accounting firm. More specifically, ODI argued that regardless of the fact that work was done by an independent firm at PPC's expense, the work papers were "part of and were prepared pursuant to its regulation of PPC, and therefore a privilege should attach." Id. 150 Ohio App.3d 126, 2002-Ohio-6280, 779 N.E.2d 838, at ¶ 17. In so arguing, ODI asserted that it should not be required to provide appellants access to documents controlled by ODI and not necessary to appellants' defense and that providing access to the documents "would negatively affect ODI's regulation of other insurers and, indeed, ODI's function as a state agency." Id. at ¶ 19.

{¶ 18} This court rejected ODI's contention, holding:

ODI asserts that it would not release such documents to the liquidator, either, never mind that the liquidator is its own superintendent. However, ODI seems to classify any documents it does not want appellants to see (but which appellants nevertheless contend are vital to their case) as those that are in its control and thus privileged, and classifies all other documents as part of the liquidation estate. The characterization of documents should not be left up to ODI, but was properly in the hands of the trial court.

* * * Under ODI's view, a state agency could take control of a privately owned company, put it out of business, sue its officers for failing to run the company properly, and deny the officers access to documents that could allow them to defend themselves. Such a result would shield the state agency from judicial scrutiny, remove all accountability, and invite error and abuse. We know of no state interest compelling enough to justify concealment of records to the degree apparently sought by ODI.

Id. at ¶ 19–20.

{¶ 19} *MetroHealth,* supra, also involved an action brought by the superintendent of Insurance, acting in his capacity as liquidator of PPC, alleging that the named defendant had received illegal preference payments from PPC. The defendant issued a subpoena duces tecum to ODI and a former employee to produce "all documents and correspondence relating to the supervision, rehabilitation, and liquidation of PPC." *MetroHealth,* supra, 150 Ohio App.3d 558, 2002-Ohio-6629, 782 N.E.2d 624, at ¶ 5. The superintendent of insurance filed a motion to quash and for a protective order, asserting that certain materials were confidential and privileged pursuant to R.C. 3903.11 and 3901.48. The trial court

determined that those statutory provisions did not preclude defendant's discovery of the ODI documents, and the superintendent appealed. This court affirmed, holding that the "subject matter waiver doctrine" would operate to allow defendant discovery of information "relevant to and within the parameters of its estoppel defense." Id. at ¶ 34.

{¶ 20} In the present case, appellant contends the trial court erroneously relied on the decisions in *Saffold* and *MetroHealth*. Appellant maintains that those cases did not address the issue whether the superintendent's role as liquidator is separate and legally distinct from that of regulator. Appellant further argues that both *Saffold* and *MetroHealth* dealt with issues of statutory privilege not present in the instant case.

{¶ 21} Appellant cites cases from other jurisdictions in which courts have recognized, under similar statutory frameworks, the distinct roles performed by the superintendent/director as regulator of insurance and as liquidator or rehabilitator. See, e.g., *Corcoran v. Natl. Union Fire Ins. Co.* (1988), 143 A.D.2d 309, 532 N.Y.S.2d 376, 378 ("Superintendent of Insurance as Liquidator * * * acts in a separate and distinct capacity from his role as regulator of the insurance industry"); *Corcoran v. Frank B. Hall & Co.* (1989), 149 A.D.2d 165, 545 N.Y.S.2d 278, 282 ("The law is clear that the Superintendent as Regulator and the Superintendent as Liquidator are distinct and separate legal entities"); *Clark v. Allen* (C.A.4, 1998), 139 F.3d 888 (Table) ("In a suit brought by a receiver, actions taken in his capacity as regulator technically represent third-party conduct and, therefore, provide no support for defenses requiring proof of a plaintiff's conduct"); *Foster v. Monsour Med. Found.* (Comm.Pa.1995), 667 A.2d 18, 20 ("the Statutory Liquidator steps into the shoes of the insurer," and her claims "are not premised upon any rights asserted by the Insurance Department or the Insurance Commissioner"); *Williams v. Continental Stock Transfer & Trust Co.* (N.D.Ill.1998), 1 F.Supp.2d 836, 843 ("the Commissioner has two capacities: that of a rehabilitator and that of a liquidator. * * * As a rehabilitator, the Commissioner and the insurance company are two separate entities").

{¶ 22} Appellant correctly observes that this court was not asked to address a capacities argument in either *Saffold* or *MetroHealth*. We note, however, that the cases cited and relied upon by appellant from other jurisdictions do not address discovery issues; rather, those cases dealt primarily with whether various claims or affirmative defenses could be raised against a plaintiff in a capacity different from that in which the plaintiff appeared in the action. See *Natl. Union Fire*, supra, 143 A.D.2d 309, 532 N.Y.S.2d at 378 (affirmative defenses directed against superintendent as regulator and public official are irrelevant in action initiated by him as liquidator); *Foster*, supra, 667 A.2d 18 (striking affirmative defenses raised against commissioner of insurance regarding

regulatory conduct prior to liquidation); *Williams*, supra, 1 F.Supp.2d at 843 (distinction between commissioner's capacities as rehabilitator and liquidator crucial for determining viability of defendant's affirmative defenses).

{¶ 23} Appellant's argument advancing the legal distinction between the superintendent as regulator and as liquidator would, in our view, be more significant if the issue on appeal involved whether affirmative defenses could be asserted against the superintendent based upon her regulatory conduct.[4] See, e.g., *Fabe*, supra, 69 Ohio St.3d at 273, 631 N.E.2d 614 (noting that the superintendent, when acting as liquidator for an insurance company, stands in the shoes of the insurer and seeks to protect the rights of the company and its insureds, claimants, and creditors); *Natl. Union Fire*, supra, 143 A.D.2d at 311, 532 N.Y.S.2d 376 (superintendent as liquidator is subject only to defenses that could be raised against insurance company). Even accepting, however, that the superintendent in her capacity as liquidator acts separately and distinctly from her role as regulator, we do not find that distinction to be dispositive of the trial court's discovery order in this case.

{¶ 24} The circumstances in the instant case are somewhat analogous to those presented in *In re Ideal Mut. Ins. Co.* (1988), 140 A.D.2d 62, 532 N.Y.S.2d 371, in which that court held that the dual identities of the superintendent of insurance could not prevent the superintendent's office as regulator from being required to comply with certain discovery requests. Under the facts of *Ideal*, the superintendent initiated proceedings to place Ideal Mutual Insurance Company ("Ideal") in rehabilitation. After attempts at rehabilitation proved futile, upon the superintendent's motion, Ideal was placed in liquidation and the superintendent was appointed statutory liquidator. The liquidator subsequently brought an action against Ideal's officers and directors, alleging that they had breached their fiduciary duty to the company by mismanaging its affairs. The defendants filed answers denying the allegations and raising various affirmative defenses and cross-claims.

{¶ 25} The liquidator filed a motion to vacate various discovery requests by defendants as irrelevant, asserting that the requests related to "conduct by the Superintendent in his capacity as the state official regulating the insurance industry (as head of the State Department of Insurance) and not in the capacity in which he brings this suit, that is, as Liquidator of Ideal." Id., 140 A.D.2d 62, 532 N.Y.S.2d at 373. The *Ideal* court agreed with the superintendent's argument

---

4. Appellant argues that under a proper recognition of the legal distinction between the two entities, the trial court would strike affirmative defenses based on the regulatory conduct of ODI. At the time of this appeal, however, the trial court had not addressed (nor had any party filed a motion to strike) affirmative defenses relating to ODI's regulatory conduct, and those issues are not before this court on appellant's appeal of the trial court's discovery order.

that as the court-appointed liquidator, he occupied a "distinct legal *persona* differing in legal status from the *persona* of the Superintendent of Insurance, as the state official regulating the insurance industry." Id., 140 A.D.2d 62, 532 N.Y.S.2d at 374.

{¶ 26} The court, however, rejected the superintendent's contention that this distinction precluded certain discovery requests. Specifically, the court held at 140 A.D.2d 62, 532 N.Y.S.2d at 375–376:

In opposing the defendants' discovery requests, plaintiff again relies on the position that the distinction between the Superintendent's dual identities should prevent the Superintendent's office as Regulator from being required to comply with the discovery requests, since the Superintendent as Regulator is not a party to the action. However, as the motion court correctly noted, examination of a party in a different capacity may be had when its conduct in that other capacity has been placed in issue. * * * Here, the conduct of the Superintendent prior to the time of liquidation has been placed squarely in issue. The plaintiff has under his control, in the Insurance Department, special and direct knowledge vital to the action and must disclose all information material and relevant to this action whether in his capacity as Regulator or Liquidator.

Similarly unsupportable is plaintiff's further contention that because the Superintendent, as Regulator, is a separate and distinct third party, any deposition of his employees should be treated as depositions of "non party witnesses", which would be available to the defendants only by means of subpoena in compliance with CPLR 3106(b), and that any documents in the Superintendent's possession should be discoverable only by means of court order in compliance with CPLR 3120(b). The reason for the cited provisions regarding discovery of non-party witnesses is to ensure that a non-party has notice and an opportunity to contest the discovery. By this very proceeding, however, appellant has had that opportunity to contest the discovery sought. Reversal now, would not serve to further either the statutory purposes nor any salutary purpose other than delay.

{¶ 27} In the present case, in its memorandum before the trial court regarding withheld discovery, appellees Spencer Koppel and QED Consulting Group asserted that appellant, through the claims asserted in the complaint, placed in issue alleged conduct by appellees affecting ODI that occurred prior to the time the superintendent was appointed as liquidator, including the time during which the superintendent was acting as regulator. A review of appellant's complaint supports appellees' contention.

{¶ 28} More specifically, the complaint included the following allegations regarding ACLIC's insolvency: (1) ACLIC's financial condition "had been deteriorating rapidly in 1998 and 1999, * * * well over one year prior to the Final

Order of Liquidation"; (2) appellees had concealed and/or negligently failed to disclose to ODI such matters based upon materially misleading statements contained in ACLIC's 1998 annual statement and its March 31, 1999 quarterly statement; (3) appellees "negligently or intentionally failed to take steps [to] ensure the filing of accurate financial reports or to otherwise notify the ODI of that condition"; and (4) appellees "knew, should have known, failed to discover and/or failed to disclose to the ODI that ACLIC had made false and/or materially misleading representations to the ODI concerning those intercompany accounts." Regarding the allegations of insolvency, appellant further alleged that as a result of the above actions, "ACLIC was able to continue operating outside the supervision of the Superintendent at a time when its financial condition was hazardous, thereby deepening ACLIC's insolvency."

{¶ 29} Appellant's complaint included the following allegations regarding the duties of ACLIC's officers and directors: (1) it was the duty and responsibility of appellees' officers and directors to "apply and enforce proper accounting principles so as to file accurate financial statements with the ODI" and (2) appellees knew, should have known, and/or should have reasonably foreseen that "ODI, ACLIC and ACLIC's creditors, shareholders and/or policyholders would justifiably rely upon" appellee Koppel's and appellee QED's actuarial opinion in the monitoring and regulation of ACLIC's financial position.

{¶ 30} Regarding ACLIC's filing of its 1998 annual statement and statements of actuarial opinion, appellant alleged that (1) contrary to a representation made by appellees Thomas Sawicz, Richard Sawicz, Goldstein, and Koppel "and relied upon by the Superintendent and the ODI, ACLIC's December 31, 1998, Annual Statement was neither a full nor a true statement of all of ACLIC's assets and liabilities or of ACLIC's condition and affairs"; (2) appellees Thomas Sawicz, Richard Sawicz, Goldstein, and Koppel "failed to discover, disclose and/or report to the ODI the misstatements or irregularities set forth * * * in ACLIC's December 31, 1998, Annual Statement, which the Superintendent and the ODI relied upon, and instead filed with the ODI an Annual Statement which they knew or should have known was false, misleading and/or incomplete"; (3) appellees Koppel and QED "failed to discover, disclose and/or report to ACLIC or the ODI the errors or irregularities * * * in the reporting of ACLIC's loss reserves"; and (4) ACLIC's officers and directors knew or should have known that ACLIC made false and/or materially misleading representations to ODI concerning the nature of inter-company accounts. Appellants further alleged that had ODI been aware of ACLIC's true financial condition as of December 31, 1998, "the ODI would have taken action to prevent further losses by ACLIC including, but not limited to, commencing regulatory supervision of ACLIC."

{¶ 31} Finally, appellant's complaint alleged that the direct and proximate result of appellees' action "was to prevent the ODI from discovering sooner that

ACLIC was insolvent or in hazardous financial condition, thus delaying the Superintendent's commencement of regulatory supervision of ACLIC"; and that, had ACLIC been placed under regulatory supervision earlier, ODI, "by virtue of its powers as supervisor, rehabilitator and/or liquidator, would have prevented tens of millions of dollars of losses ultimately sustained by ACLIC."

{¶ 32} Appellant maintains that she is not attempting to impede discovery in this case; rather, appellant contends, as did the appellant in *Ideal,* supra, that the trial court is compelling the liquidator to respond to discovery requests on behalf of a nonparty (i.e., the superintendent as director of the ODI). However, even assuming that the superintendent's action is properly characterized as one brought in her capacity as liquidator, similar to *Ideal,* conduct occurring prior to the liquidation and relevant to the ability of appellees to defend themselves has been placed in issue by the superintendent. Under these circumstances, and where appellant has under her control, through the department of insurance, "special and direct knowledge vital to the action," we find persuasive the *Ideal* court's conclusion that the superintendent must disclose "all information material and relevant to this action," whether in the superintendent's capacity as regulator or liquidator. *Ideal,* supra, 140 A.D.2d 62, 532 N.Y.S.2d at 376.[5]

{¶ 33} As previously noted, similar concerns were addressed in *Saffold,* supra, 150 Ohio App.3d at ¶ 20, in which this court rejected the notion that ODI should be permitted to "take control of a privately owned company, put it out of business, sue its officers for failing to run the company properly, and deny the officers access to documents that could allow them to defend themselves." Likewise, in the instant case, where the superintendent has initiated an action against officers of a failed corporation and raised claims implicating matters within the knowledge of the department of insurance, presumably acquired both prior to and after the superintendent's appointment as liquidator, we are unable to conclude that the trial court erred in rejecting appellant's capacities argument, and we find no abuse of discretion by the trial court in rendering its discovery order.

{¶ 34} Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

LAZARUS, P.J., and PETREE, J., concur.

---

5. Notwithstanding appellant's concern that the trial court's order potentially interferes with the attorney-client privilege between the liquidator and her counsel, we are confident that the trial court, upon a proper motion, will give due consideration to any motion raising a viable privilege claim.